Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2016 09:07 AM CST

In re Estate of George Edward Balvin, Sr., deceased.
George Balvin, Jr., appellant,
v. Kevin Balvin, appellee.

___ N.W.2d ___

Filed December 16, 2016.    No. S-15-1033.

1. **Appeal and Error.** An appellate court does not consider errors which are argued but not assigned.
2. **Decedents' Estates: Appeal and Error.** An appellate court reviews probate cases for error appearing on the record made in the county court.
3. **Decedents' Estates: Judgments: Appeal and Error.** When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.
4. **Decedents' Estates: Appeal and Error.** The probate court's factual findings have the effect of a verdict, and an appellate court will not set those findings aside unless they are clearly erroneous.
5. **Decedents' Estates: Trusts.** Neb. Rev. Stat. § 30-2715 (Reissue 2016) allows for nonprobate transfers upon death in the form of nontestamentary trusts, and nontestamentary trust assets are not subject to probate other than for specific statutory expenses.
6. **Contracts.** A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.
7. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
8. **Contracts.** Whether a contract is ambiguous is a question of law.
9. **Decedents' Estates: Wills: Joint Tenancy.** Property owned in joint tenancy passes to the surviving joint tenant by virtue of the nature of the tenancy and not under the law of descent and distribution or by virtue of the provisions of the will of the first joint tenant to die.
10. **Decedents' Estates: Insurance.** Neb. Rev. Stat. § 30-2715(a) (Reissue 2016) provides, in part, that a provision for a nonprobate transfer on

death in an insurance policy or other written instrument of a similar nature is nontestamentary; therefore, nonprobate life insurance benefits cannot be used to set off a portion of an intestate estate.

11. **Decedents' Estates.** Under Neb. Rev. Stat. §§ 30-2209 and 30-2303 (Reissue 2016), a decedent's daughter-in-law is not an heir at law of the intestate estate.

Appeal from the County Court for Douglas County: Marcena M. Hendrix, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Michael D. Kozlik and William G. Stockdale, of Harris & Associates, P.C., L.L.O., for appellant.

William F. McGinn, of McGinn, McGinn, Springer & Noethe Law Firm, for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Kelch, J.

## INTRODUCTION

This appeal arises from a dispute concerning an intestate estate. On appeal, one of the decedent's two children challenges the order of the county court for Douglas County that approved the final accounting and ordered distribution accordingly. He further contends that the county court erred in naming the decedent's daughter-in-law as an heir at law of the intestate estate. We conclude that the county court erred in including certain nonprobate assets in the intestate estate and in naming the decedent's daughter-in-law as an heir at law, but we determine that the county court did not err in excluding certain assets from the intestate estate. Therefore, we affirm in part and in part reverse, and remand to the county court for further proceedings consistent with this opinion.

## FACTS

The parties stipulated to the relevant facts, which we summarize as follows:

On March 17, 2004, George Edward Balvin, Sr. (George Sr.), and Rita J. Balvin, then Florida residents, executed a revocable trust agreement (the Balvin Family Trust) as grantors and as trustees. The Balvin Family Trust designated the couple's son Kevin Balvin as the successor trustee upon the last to die of George Sr. and Rita. The Balvin Family Trust provided for equal division, per stirpes, of all remaining assets of the trust to Kevin and George Balvin, Jr. (George Jr.), the couple's other son. On March 17, George Sr. and Rita conveyed their Florida real estate to the Balvin Family Trust by recorded deed.

On March 20, 2010, George Sr. opened an account at Mutual of Omaha Bank with an initial deposit of $69,446.97. All of these funds belonged to George Sr., as Rita had died the year before. The account's agreement form, incorporated into the stipulation, lists Kevin as an authorized signer. The parties stipulated that this agreement form conforms to Neb. Rev. Stat. § 30-2719(a) (Reissue 2016). The provision for a "Multiple-Party Account" with right of survivorship is marked with an "X" but is not initialed, as directed in the agreement form and in § 30-2719(a), which states that a "contract of deposit that contains provisions in substantially the form provided in this subsection establishes the type of account provided." The agreement form shows no other "Beneficiary Designation" or "Rights of Survivorship" selection. On March 24, Kevin purchased a Volvo automobile titled to him and his wife, Sarah Balvin, using $27,000 drawn from the Mutual of Omaha Bank account.

George Sr. died in Omaha on May 10, 2011. The parties do not dispute that George Sr. died intestate. The county court appointed Kevin and George Jr. as joint personal representatives of George Sr.'s estate.

On the date of George Sr.'s death, the Mutual of Omaha Bank account carried a balance of $28,034.81.

Following George Sr.'s death, Kevin, acting as the successor trustee of the Balvin Family Trust, sold the Florida real

estate. He then executed a warranty deed dated April 20, 2012, individually and as trustee of the Balvin Family Trust. On April 27, a closing agency deposited the proceeds from the sale of the Florida real estate, amounting to $69,164.35, into the trust account of a Council Bluffs, Iowa, law firm representing Kevin.

The corpus of the Balvin Family Trust included a checking account in Florida. On April 27, 2012, the last check drawn from that account, payable to Kevin in the amount of $3,645.19, was deposited in the law firm's trust account. A refund of $126.41 from a Florida utilities company was also deposited into the law firm's trust account.

On July 14, 2011, life insurance policy proceeds of $30,027.12 were issued to Kevin, whom the parties stipulated was the designated beneficiary, and deposited in his personal checking account. Kevin deposited another $6,000 into his personal checking account that he received as designated beneficiary of a burial benefit from "Metal Lathers Union #46." On July 29, Sarah mailed George Jr. a $15,013.56 check drawn from a joint account that she shared with Kevin. The memorandum line of the check read, "50% life Insurance." On August 15, Kevin mailed George Jr. a $3,000 check from the same account, with a memorandum line stating "1/2 of Death Benef." George Jr. received and deposited both checks.

On November 4, 2013, Kevin filed a petition in county court, probate division, for complete settlement of the estate, along with an "Amended Inventory." The parties did not stipulate to this amended inventory. Kevin requested that the county court determine that George Sr. had died intestate, determine his heirs, approve the "Final Accounting filed herein," approve previous distributions, and direct distribution of the estate.

On December 2, 2014, the county court conducted a hearing where the parties presented the stipulated facts above.

At oral argument, Kevin's counsel informed this court that the parties had presented additional evidence at another

hearing. However, a bill of exceptions for that hearing is not in the record before us.

On September 30, 2015, the county court filed its "Formal Order for Complete Settlement After Informal Intestate Proceeding." The county court found that George Sr. had died intestate, leaving his sons, Kevin and George Jr., and his daughter-in-law Sarah as heirs. The county court approved Kevin's final accounting as personal representative and incorporated it into the order, approved the reported distributions already made, and directed Kevin to deliver and distribute title and assets of the estate accordingly.

Kevin's final accounting of the intestate estate, as approved by the county court, included the net proceeds from the sale of the Florida residence, which had been transferred to the law firm's trust account. The final accounting did not include the Mutual of Omaha Bank account as part of the intestate estate, nor did it include the $27,000 that Kevin withdrew from that account to purchase the Volvo automobile. Kevin's final accounting offset George Jr.'s share of the intestate estate by the voluntary payments that Kevin and Sarah had made to George Jr. from life insurance proceeds.

George Jr. now appeals the formal order for complete settlement.

## ASSIGNMENTS OF ERROR

George Jr. assigns that the county court erred in (1) ordering the distribution of the Florida residence sale proceeds, held in trust, as part of the intestate estate; (2) failing to include the Mutual of Omaha Bank account as an asset of the intestate estate; (3) failing to include in the intestate estate the $27,000 that Kevin "converted" from George Sr.'s checking account to purchase the Volvo automobile; (4) allowing an offset of the voluntary payments of insurance proceeds by Kevin and Sarah to George Jr. against George Jr.'s share of the intestate estate and trust assets; and (5) finding that Sarah, the decedent's daughter-in-law, was an heir at law of the intestate estate.

[1] We note that George Jr. also argues, but does not specifically assign, that the county court erroneously included in the intestate estate sums sourced from Bank of America accounts of which the Balvin Family Trust was partly comprised. But an appellate court does not consider errors which are argued but not assigned. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

## STANDARD OF REVIEW

[2-4] An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Greb*, 288 Neb. 362, 848 N.W.2d 611 (2014). When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below. *Id.* The probate court's factual findings have the effect of a verdict, and an appellate court will not set those findings aside unless they are clearly erroneous. *Id.*

## ANALYSIS

### Proceeds From Sale of
### Florida Residence

George Jr. asserts that the county court erred in ordering the distribution of the proceeds from the sale of the Florida residence as part of the intestate estate. In 2004, George Sr. and Rita conveyed their Florida residence by recorded deed to the Balvin Family Trust, a revocable inter vivos trust. The trust named Kevin as the successor trustee and provided that upon the death of George Sr. and Rita, the residence was to be transferred in equal shares to Kevin and George Jr. However, after his parents' deaths, Kevin sold the residence, transferred the net proceeds to the trust account of the law firm representing him, and listed the proceeds as part of the intestate estate in his final accounting. George Jr. claims that the court erred in approving the distribution of the Florida residence proceeds because they were nonprobate property of the Balvin Family Trust and not property of the estate. On the other hand, Kevin

contends that the formal order for complete settlement after informal intestate proceedings was "retrospective" and not in error. Brief for appellee at 6. However, Kevin does not explain how terming the order "retrospective" refutes George Jr.'s claims.

[5] As noted by George Jr., Neb. Rev. Stat. § 30-2715 (Reissue 2016) allows for nonprobate transfers upon death in the form of nontestamentary trusts, which include inter vivos trusts like the Balvin Family Trust. See, also, *In re Conservatorship of Franke*, 292 Neb. 912, 928, 875 N.W.2d 408, 420 (2016) (recognizing that "the Nebraska Probate Code authorizes nontestamentary, nonprobate transfers on death, including transfers through trusts"). Clearly, the Balvin Family Trust created by George Sr. and Rita was nontestamentary, and therefore, the property of the Balvin Family Trust was not subject to probate other than for specific statutory expenses of the estate, not applicable here, as allowed by Neb. Rev. Stat. § 30-3850(3) (Reissue 2016). See, also, *In re Estate of Chrisp*, 276 Neb. 966, 759 N.W.2d 87 (2009). Because the residence in Florida and the proceeds therefrom were property of the Balvin Family Trust and not subject to probate, the county court erred in including such property in the final order.

### Mutual of Omaha
### Bank Account

George Jr. also claims that the county court erred in failing to include the Mutual of Omaha Bank account as an asset of the estate. Kevin and George Jr. stipulated that on March 20, 2010, George Sr. executed a contract of deposit to create an account with Mutual of Omaha Bank. Both parties agree, as do we, that the contract of deposit conformed with § 30-2719(a). Because the contract of deposit is statutorily sufficient under § 30-2719(a), we need not determine the intent of the depositor, George Sr. See *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007) (if contract of deposit is in form provided in § 30-2719(a), then court looks only to contract of deposit

and treats account as type of account designated in contract of deposit).

Although George Jr. agrees that the contract of deposit is statutorily sufficient, he nevertheless argues that George Sr. did not choose a multiple-party account with right of survivorship, because he did not initial the contract of deposit as set forth in § 30-2719(a). Thus, he concludes, the contract of deposit was not a multiple-party account with right of survivorship, and the proceeds therefrom should be part of the estate inventory.

[6-8] In essence, George Jr. alleges deficiencies in the execution of a valid contract. In the instant case, any such deficiencies, if present, would stem from ambiguity of the contract itself. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003). However, a contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Jensen v. Board of Regents*, 268 Neb. 512, 684 N.W.2d 537 (2004). Whether a contract is ambiguous is a question of law. See *General Drivers & Helpers Union v. County of Douglas*, 291 Neb. 173, 864 N.W.2d 661 (2015).

The relevant portion of the contract of deposit reads as follows:

> *Ownership of Account*
> The specified ownership will remain the same for all accounts.
> *(For consumer accounts, select and initial.)*
> ☐ Single-Party Account _____    ☒ Multiple-Party Account _____
> _____
> ☐ Corporation - For Profit    ☐ Corporation - Nonprofit
> ☐ Partnership    ☐ Sole Proprietorship
> ☐ Limited Liability Company
> ☐ Trust-Separate Agreement Dated: _____
> ☐  _____

*Beneficiary Designation*
*(Check appropriate ownership above - select and initial below.)*
☐ Single-Party Account                                    ____
☐ Single-Party Account with Pay-On-Death (POD)            ____
☒ Multiple-Party Account with Right of Survivorship       ____
☐ Multiple-Party Account with Right of Survivorship
   and POD                                                ____
☐ Multiple-Party Account without Right of Survivorship    ____

Here, the contract of deposit listed both George Sr. and Kevin as joint owners. In addition, George Sr. signed the bottom of the form, which bears a marked box next to "Multiple-Party Account" under the ownership section and a marked box next to "Multiple-Party Account with Right of Survivorship" under the beneficiary designation section to assign rights upon the death of an account holder. Even though neither party to the contract of deposit initialed the selected options, the document is not subject to at least two reasonable but conflicting interpretations or meanings. We find the contract of deposit clearly reflects that George Sr. desired a "Multiple-Party Account with Right of Survivorship" and, as a result, is not ambiguous as a matter of law.

[9] As a multiple-party account with right of survivorship, then, the Mutual of Omaha Bank account is subject to the "elementary principle of law that property owned in joint tenancy passes to the surviving joint tenant by virtue of the nature of the tenancy and not under the law of descent and distribution or by virtue of the provisions of the will of the first joint tenant to die." *In re Estate of Walters*, 212 Neb. 645, 647, 324 N.W.2d 889, 890 (1982). Accordingly, the Mutual of Omaha Bank account was a nonprobate asset, and the county court did not err in excluding it from the probate estate.

### PURCHASE OF VOLVO AUTOMOBILE

Next, George Jr. claims that the county court erred in failing to include in the intestate estate the $27,000 that Kevin "converted" from George Sr.'s checking account to purchase the Volvo automobile. On March 20, 2010, George Sr. opened

an account at Mutual of Omaha Bank with an initial deposit of $69,446.97. All of these funds belonged to George Sr. The account's agreement form listed Kevin as an authorized signer and joint owner. On March 24, Kevin purchased a Volvo automobile titled to him and Sarah. Kevin paid for it with a $27,000 check drawn from the Mutual of Omaha Bank account.

The contributions to a joint account are controlled by Neb. Rev. Stat. § 30-2722 (Reissue 2016), which provides:

> (a) In this section, net contribution of a party means the sum of all deposits to an account made by or for the party, less all payments from the account made to or for the party which have not been paid to or applied to the use of another party and a proportionate share of any charges deducted from the account, plus a proportionate share of any interest or dividends earned, whether or not included in the current balance. . . .
>
> (b) During the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent.

The parties do not dispute that Kevin withdrew funds that he did not contribute to the joint account, and pursuant to § 30-2722, George Sr. may have had a claim against Kevin, assuming he had not consented to the withdrawal. Upon George Sr.'s death, the personal representative became the authorized party with standing to bring an action to recover assets of the estate. See Neb. Rev. Stat. §§ 30-2464, 30-2470, and 30-2472 (Reissue 2016). However, Kevin and George Jr. were appointed copersonal representatives, and one copersonal representative can bring a claim for conversion only with the concurrence of the other. See Neb. Rev. Stat. § 30-2478 (Reissue 2016) (providing that "[i]f two or more persons are appointed corepresentatives and unless the will provides otherwise, the concurrence of all is required on all acts connected with the administration and distribution of the estate"). Without

Kevin's concurrence, George Jr. could not solely bring a claim of conversion. Moreover, the record does not reflect that Kevin agreed to bring a claim against himself or that George Jr. ever sought the removal of Kevin as copersonal representative due to a conflict of interest pursuant to Neb. Rev. Stat. § 30-2454 (Reissue 2016).

In the absence of a conversion claim, properly lodged, the county court did not commit error in failing to include in the intestate estate the $27,000 that Kevin withdrew from the joint account to purchase the Volvo automobile.

## OFFSET OF INSURANCE PAYMENTS

George Jr. further contends that the county court erred in allowing an offset of voluntary payments against his intestate share of estate assets. On July 14, 2011, life insurance policy proceeds of $30,027.12 were issued to Kevin, who the parties stipulated was the designated beneficiary and who deposited the proceeds into his personal checking account. On July 29, George Jr. received a check from Kevin and Kevin's wife, Sarah, in the amount of $15,013.56, which represented 50 percent of the life insurance proceeds. Also, the parties stipulated that as the designated beneficiary of "Metal Lathers Union #46," Kevin received a burial benefit check in the amount of $6,000. Again, Kevin sent George Jr. a check for $3,000, representing 50 percent of the death benefit.

[10] George Jr. argues that insurance proceeds with a designated beneficiary are nonprobate assets and cannot be used to set off his share of the intestate estate. We agree. Section 30-2715(a) provides, in part, "A provision for a nonprobate transfer on death in an insurance policy . . . or other written instrument of a similar nature is nontestamentary." See, also, *In re Trust of Rosenberg*, 273 Neb. 59, 68, 727 N.W.2d 430, 440 (2007) (citing § 30-2715 and holding that "[g]enerally, life insurance benefits are a type of nonprobate transfer on death which is nontestamentary"). Accordingly, the life insurance benefits in this instance were nonprobate and the county court

erred by offsetting any amounts in the probate proceedings due to the payment of life insurance.

### Heir of Decedent

Lastly, George Jr. assigns that the county court erred in finding Sarah, the daughter-in-law of George Sr., to be an heir at law. We agree.

[11] Neb. Rev. Stat. § 30-2209 (Reissue 2016), provides:

(18) Heirs mean those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent.

. . . .

(23) Issue of a person means all his or her lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent contained in the Nebraska Probate Code.

Further, Neb. Rev. Stat. § 30-2303 (Reissue 2016) states:

The part of the intestate estate not passing to the surviving spouse . . . , or the entire intestate estate if there is no surviving spouse, passes as follows:

(1) to the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally, but if of unequal degree, then those of more remote degree take by representation.

Under the foregoing authority, Sarah, as a daughter-in-law rather than the issue of George Sr., is not an heir at law, and the county court erred in so finding.

### CONCLUSION

We affirm in part and in part reverse the formal order for complete settlement and remand the cause to the county court for further proceedings consistent with this opinion.

Affirmed in part, and in part reversed and remanded for further proceedings.