Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/01/2018 09:10 AM CDT

In re Estate of Harley Newman, deceased.
Linda Martens, Personal Representative of the
Estate of Harley Newman, deceased, appellee,
v. Stewart Newman, appellant.

___ N.W.2d ___

Filed April 17, 2018.    No. A-16-1049.

1. **Decedents' Estates: Appeal and Error.** An appellate court reviews probate cases for error appearing on the record made in the county court.
2. **Decedents' Estates: Judgments: Appeal and Error.** When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.
3. **Decedents' Estates: Appeal and Error.** The probate court's factual findings have the effect of a verdict, and an appellate court will not set those findings aside unless they are clearly erroneous.
4. **Trial: Judges: Words and Phrases.** An ex parte communication occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party.
5. **Trial: Witnesses: Parties.** Neb. Rev. Stat. § 24-734(4) (Reissue 2016) only pertains to allowing a witness to be examined telephonically with the consent of the parties. It does not address permitting a party to appear and participate at trial telephonically.
6. **Due Process: Trial: Witnesses: Evidence.** When a person has a right to be heard, procedural due process includes a reasonable opportunity to refute or defend against a charge or accusation and a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation.
7. **Constitutional Law: Prisoners.** A prisoner has no absolute constitutional right to be released from prison so that the prisoner can be present at a hearing in a civil action.
8. **Due Process: Prisoners: Right to Counsel.** Although due process does not require the appointment of counsel to represent a prisoner in a private civil matter, due process does require that the prisoner receive

meaningful access to the courts to defend against suits brought against him or her.

9. **Prisoners: Courts: Claims: Damages: Proof.** To establish a violation of the right of meaningful access to the courts, a prisoner must establish the State has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury.

10. **Constitutional Law: Prisoners: Courts.** The constitutional right to access the courts does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences directly or collaterally and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental and perfectly constitutional consequences of conviction and incarceration.

11. **Pretrial Procedure: Appeal and Error.** Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.

12. **Pretrial Procedure: Proof: Appeal and Error.** The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion.

13. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the County Court for Douglas County: CRAIG Q. MCDERMOTT, Judge. Reversed and remanded for a new trial.

Stewart Newman, pro se.

Nick Halbur, of Elder Law of Omaha, P.C., L.L.O., for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Stewart Newman appeals from an "Order for Probate of Will" entered in the county court for Douglas County wherein the court found that the last will and testament of Harley

Newman, executed February 15, 2016, was a valid will and should be probated by the personal representative, Linda Martens. Stewart challenges multiple pretrial matters, as well as the court's determination that the will was valid, and the court's failure to allow his claim for the return of personal property. Based on the reasons that follow, we reverse, and remand for a new trial.

## BACKGROUND

This case involves the formal probate of Harley's last will and testament. Harley, the father of Stewart and Martens, passed away on February 22, 2016. On March 28, Martens filed an "Application for Informal Probate of Will and Informal Appointment of Personal Representative," along with Harley's last will and testament executed on February 15. On March 29, the "Registrar" issued a "Certificate to Probate Will" and appointed Martens the personal representative. Stewart filed a "Petition of Claim and Request of Formal Testacy" on April 15, requesting a formal probate of Harley's will and requesting an order to return Stewart's personal property that was left in Harley's custodial care. The court set a pretrial conference hearing for May 31. Stewart filed additional motions before the May 31 hearing.

Stewart was not present at the pretrial conference hearing on May 31, 2016, because he was incarcerated. Several matters were addressed. However, the hearing was ultimately set aside for a new pretrial conference on August 12 to afford Stewart the opportunity to be heard. At the August 12 hearing, Stewart participated in the hearing by telephone and the court informed the parties that all issues addressed at the May 31 hearing would be reconsidered.

At the August 12, 2016, hearing, Stewart was granted in forma pauperis status. The court denied his motion for appointment of counsel. The court also considered Stewart's "Motion for Subpoena," in which he asked the court for "an Order to Subpoena the phone records of the Nebraska Department of Corrections Services," specifically those records of calls

between him and Harley. Martens objected to the form of the filing, which the court sustained. Stewart also filed a motion which included a request that Martens produce an address for Diana Kappel, his ex-wife. At the hearing, Martens' counsel stated that Martens did not have Kappel's address and the court ruled that Martens could not be compelled to produce evidence it did not have or to investigate for Stewart.

Stewart had also filed a motion to appear telephonically. Martens objected to allowing Stewart to appear or to testify telephonically for trial, citing Neb. Rev. Stat. § 24-734(4) (Reissue 2016). The court granted Stewart's motion to the extent of nonevidentiary hearings. It ruled that trial would not be held telephonically because there was no stipulation or consent by all the parties to conduct an evidentiary hearing by such means.

Another nonevidentiary hearing was held on September 22, 2016, to address additional motions and filings by Stewart. Stewart participated by telephone. Stewart's request for Kappel's address was again discussed, and Martens' attorney again stated neither he nor Martens had the address. Stewart's "Motion to Issue a Transport Order," allowing him to be physically present for trial, was denied. Before the conclusion of the hearing, the court told Stewart that he could submit his arguments for trial in a brief and indicated that it would not make a decision until it had received his brief.

Trial was held on September 27, 2016. The court took judicial notice of Harley's last will and testament already in the court record and heard testimony from three witnesses. The evidence showed that Harley executed his last will and testament on February 15 in his wife's room at a health care facility where she resided. Harley's wife and two daughters were present, and he was able to identify those individuals correctly.

Melinda Streetman, a paralegal and notary public, testified that she reviewed the key provisions of the will with Harley and that he verified their accuracy. Streetman specifically

went over a provision in the will that excluded Stewart from receiving any portion of Harley's estate, and Harley affirmed his intent to exclude Stewart. Only Streetman, Harley, and his wife were present during the discussion of the provisions in the will.

Streetman identified Harley's last will and testament and her own signature on the will accompanied by her notary seal. She also testified that she witnessed Harley sign the document and that she observed the two witnesses, who both worked at the facility, sign the will.

The first witness, a social worker, testified that she signed the will on February 15, 2016. She identified her signature and Harley's signature on the will. She testified that she knew Harley because his wife was her patient at the facility where she worked, Harley had been her patient at one time, and Harley visited his wife every day. The social worker testified that on the day the will was executed, Harley was not acting out of the ordinary, there was nothing unusual about his behavior, and she had no concerns about his cognition.

The other witness to the will, a nurse, testified that she knew Harley and his wife because she provided care to Harley's wife. She testified that she was present when Harley signed the will, she had no concerns about his cognition, and there was nothing unusual about his behavior. She identified her signature and Harley's signature on the will.

Following trial, the court entered an order on September 29, 2016, finding that Harley's last will and testament was a valid will. It granted the application for probate of the will and ordered that the will be probated by Martens.

## ASSIGNMENTS OF ERROR

Stewart assigns that the trial court erred in (1) having ex parte communication with Martens' attorney, as well as failing to allow Stewart to be heard and present at trial; (2) making a decision on the will before the court received his brief; (3) not allowing him his right to the discovery of evidence to

support his claims; (4) finding that the document at issue was a self-proven will and that Harley was competent to sign it; (5) failing to find that Stewart is a "rightful heir in accordance to Article Four of the instrument"; and (6) failing to allow his claim of unlawful taking of his personal property.

## STANDARD OF REVIEW

[1-3] An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Balvin*, 295 Neb. 346, 888 N.W.2d 499 (2016). When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below. *Id.* The probate court's factual findings have the effect of a verdict, and an appellate court will not set those findings aside unless they are clearly erroneous. *Id.*

## ANALYSIS

Stewart makes two separate arguments under his first assignment of error. He argues that the court erred in having ex parte communication with Martens' attorney at the May 31, 2016, hearing and that the court erred in failing to allow him to be heard and present at the September 27 trial.

We first address Stewart's ex parte communication argument. Stewart argues that the trial judge used the hearing on May 31, 2016, to engage in an ex parte communication with Martens' attorney where the two of them discussed how they were going to proceed to ensure Stewart could not bring any evidence or appear, while keeping him from having any grounds for an appeal.

[4] The May 31, 2016, hearing was held without Stewart's participation. However, no ex parte communication took place. An ex parte communication occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party. *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004). Stewart had notice of the hearing. The court entered an order on April 18 for a

pretrial conference, notifying the parties that a pretrial conference would be held on May 31. Stewart even responded to the notice by filing a motion for continuance asking that the May 31 hearing be rescheduled. Stewart was unable to attend the hearing because he was incarcerated and was not represented by counsel, so the hearing proceeded without him.

Further, there was no prejudice to Stewart from the May 31, 2016, hearing, because at the hearing, the court concluded that Stewart should be allowed to participate in the proceedings by telephone. A subsequent pretrial conference hearing was held on August 12, where Stewart participated by telephone. At that hearing, the court informed the parties that all issues addressed at the May 31 hearing would be reconsidered. The court then gave Stewart the opportunity to address his filings and motions.

Stewart also suggests that an ex parte communication occurred at a June 10, 2016, hearing and that the court reporter had not filed a complete bill of exceptions because the June 10 hearing was not in the record. However, the record before us reflects that a hearing was never held on June 10.

We conclude that Stewart's argument under his first assignment of error—the court's ex parte communication with Martens' attorney—is without merit.

As previously stated, Stewart also argues under his first assignment of error that the court erred in denying him the right to appear either in person or telephonically at the trial on September 27, 2016. At the August 12 pretrial conference hearing, Martens objected to allowing Stewart to appear or to testify at trial by telephone, citing § 24-734(4). Although the court had granted Stewart's motion to participate by telephone for nonevidentiary hearings, it ruled that trial would not be held telephonically because there was no stipulation or consent by all the parties to conduct the evidentiary hearing by such means. Stewart had also filed a motion to issue a transport order, allowing him to be physically present at trial, which the trial court denied.

[5] We first address Marten's reliance upon § 24-734(4) in support of her objection to allowing Stewart to appear or testify by telephone. Subsection (4) of § 24-734 provides: "A judge, in any case *with the consent of the parties*, may permit *any witness who is to be examined by oral examination* to appear by telephonic, videoconferencing, or similar methods, with any costs thereof to be taxed as costs." (Emphasis supplied.) This subsection only pertains to allowing a witness to be examined telephonically with the consent of the parties. It does not address permitting a party to appear and participate at trial telephonically. We conclude that the statute is irrelevant to the issue of whether the court erred in denying Stewart the right to appear either in person or telephonically at the trial.

[6-8] Stewart argues that the court's refusal to allow him to appear in person or by telephone at trial deprived him of procedural due process. He relies on *Conn v. Conn*, 13 Neb. App. 472, 695 N.W.2d 674 (2005), where this court determined that an inmate's due process rights were violated when the trial court denied his request to participate by telephone in a dissolution proceeding brought against him by his wife. We held that "'[w]hen a person has a right to be heard, procedural due process includes . . . a reasonable opportunity to refute or defend against a charge or accusation [and] a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation . . . .'" *Id.* at 475, 695 N.W.2d at 677, quoting *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). We further stated in *Conn*:

> "Although it is clear that a prisoner has no absolute constitutional right to be released from prison so that the prisoner can be present at a hearing in a civil action . . . and that due process does not require the appointment of counsel to represent the prisoner in a private civil matter . . . due process does require that the prisoner receive meaningful access to the courts to defend [against] suits brought against him or her."

13 Neb. App. at 475, 695 N.W.2d at 677, quoting *Board of Regents v. Thompson*, 6 Neb. App. 734, 577 N.W.2d 749 (1998) (citations omitted).

The *Conn* case can be distinguished from the present case in that *Conn* involved a civil matter brought against an inmate, whereas Stewart could be designated as an "objector" or a "contestant" in the instant probate matter which he did not initiate. See Neb. Rev. Stat. §§ 30-2429.01 and 30-2431 (Reissue 2016). Stewart is not defending against a charge or accusation brought against him. However, he is not in the position of a plaintiff either. Stewart did not file this action. Rather, he is in the position of trying to protect what he views as his property interest in the estate of Harley.

[9,10] In *Jacob v. Nebraska Dept. of Corr. Servs.*, 294 Neb. 735, 884 N.W.2d 687 (2016), the Nebraska Supreme Court held that to establish a violation of the right of meaningful access to the courts, a prisoner must establish the State has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim. The court further noted that the constitutional right to access the courts does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. *Id.*

> The tools it requires to be provided are those that the inmates need in order to attack their sentences directly or collaterally and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental and perfectly constitutional consequences of conviction and incarceration.

*Id.* at 745, 884 N.W.2d at 695, citing *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

Stewart is not challenging his sentence or the conditions of his confinement. However, he is challenging the validity of

the will of Harley, his father. The will, on the one hand, is in no way related to his imprisonment, but, on the other hand, is an attempt to simply protect a property right that he has in Harley's estate. In that sense, Stewart stands similarly situated to the husband in *Conn v. Conn*, 13 Neb. App. 472, 695 N.W.2d 674 (2005), who was the defendant in a divorce action. The trial court's refusal to allow Stewart to even participate by telephone at trial is more than "one of the incidental and perfectly constitutional consequences of conviction and incarceration." See *Jacob v. Nebraska Dept. of Corr. Servs.*, 294 Neb. at 745, 884 N.W.2d at 695, citing *Lewis v. Casey, supra*.

We conclude the court's failure to allow Stewart to participate in the trial by telephone was a deprivation of his fundamental due process rights pursuant to U.S. Const. amends. V and XIV and Neb. Const. art. I, § 3.

Stewart next assigns that the court erred in making a decision on the validity of the will before it received his trial brief. At the September 22, 2016, hearing, the court told Stewart he could submit a brief to the court within 14 days after trial, where he could argue his position because he would not be present in person or telephonically. The court indicated that it would refrain from making a decision on the matter until after it received his brief. Stewart's brief was filed on October 3. The court announced its decision at trial on September 27 and entered an order on September 29.

Although the court was not technically required to wait to make its decision until after it received Stewart's brief, it should have done so. Given our finding above that Stewart's due process rights were violated when he was not allowed to participate by telephone at trial, we find this error by the court compounded the situation. Given the violation of Stewart's due process rights discussed previously, we must reverse, and remand for a new trial.

Stewart's third assignment of error is that the trial court erred in not allowing him his right to the discovery of evidence to support his claims. Stewart argues that he was denied

two specific discovery requests: the address of Kappel and recordings of telephone conversations between him and Harley from the Department of Correctional Services. He argues that Kappel would have provided evidence in regard to Stewart's personal property left in Harley's care, a 2009 will by Harley, and the relationship between Stewart's children and his parents prior to Harley's death. He alleges the recorded telephone conversations would show the continued relationship between him and Harley, discussions of Stewart's personal property, Harley's desire to leave Stewart his home, and Harley's lack of coherence due to heavy medication on or about February 15, 2016.

[11,12] Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016). The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *Id.*

In regard to the first discovery issue, Stewart filed various motions requesting Kappel's address from Martens. The court denied his motions related to Kappel's address at the hearings on August 12 and September 22, 2016. At both hearings, Martens' counsel stated that neither he nor Martens had Kappel's current address. The court ruled that Martens could not be compelled to produce evidence it did not have or to investigate for Stewart. Martens did not have Kappel's address, and it was Stewart's burden to locate a witness he believed could support his case. Martens was not responsible for finding information for Stewart that she did not have. The court did not err in denying his motions related to Kappel's address.

The second discovery ruling Stewart challenges is the denial of his efforts to obtain recorded telephone conversations from the Department of Correctional Services. Stewart filed a "Motion for Subpoena" related to telephone records and recorded conversations kept by the Department of Correctional

Services. Martens objected to the motion based on the improper form of the filing, which the trial court granted. Stewart subsequently filed a "Motion for Order to Release Discovery Information," seeking telephone records and recorded conversations. Martens again objected as to form, stating that a motion for the release of telephone records is not proper discovery. Martens' counsel further stated that the Department of Correctional Services could be compelled under the proper form for a subpoena, but Stewart's filing was not a subpoena, it was a motion. The trial court denied Stewart's "Motion for Order to Release Discovery Information."

On appeal, Stewart does not argue that either of his requests for the telephone records and recorded conversations were in the proper form. Rather, he asserts that the court's failure to grant his requests for telephone records and recorded conversations prevented him from obtaining evidence to support his claims. Stewart has failed to meet his burden to show that the discovery ruling was an abuse of discretion. See *Moreno v. City of Gering, supra*. We conclude the trial court did not err in the discovery rulings challenged by Stewart.

Stewart's next assignment of error is that the court erred in not allowing his claim for unlawful taking of his property. In his "Petition of Claim and Request of Formal Testacy," his initial filing, Stewart requested an order to return personal property belonging to him or the value thereof that was left in Harley's custodial care. Stewart states that he left personal property in Harley's care when he was incarcerated in 2011, that Martens had knowledge of the personal property, and that she sold or disposed of his property without his permission.

Stewart attempted to combine the contest of the will with a creditor's claim against the estate. The claim against the estate was discussed at the September 22, 2016, hearing. Martens' counsel stated that she had disallowed Stewart's property claim in the "Objections" she filed in response to Stewart's "Petition of Claim and Request of Formal Testacy." The "Objections" stated that she was disallowing all claims beyond his demand

for formal probate of the will. Martens further stated that Stewart had not filed a petition for allowance and that the time allowed to do so had elapsed.

Neb. Rev. Stat. § 30-2488(a) (Reissue 2016) provides in relevant part:

> Every claim which is disallowed in whole or in part by the personal representative is barred so far as not allowed unless the claimant files a petition for allowance in the court or commences a proceeding against the personal representative not later than sixty days after the mailing of the notice of disallowance or partial allowance if the notice warns the claimant of the impending bar.

In the present case, Martens disallowed Stewart's claim for the return of personal property in the "Objections" filed May 24, 2016. Pursuant to § 30-2488, the disallowance shifted the burden to Stewart to file a petition for allowance no later than 60 days after the notice of disallowance. He did not file a petition for allowance within the time allowed. Accordingly, Stewart's claim for the return of his personal property was not before the court. This assignment of error is without merit.

[13] Finally, because we have determined that Stewart's due process rights were violated requiring us to reverse, and remand for a new trial, we need not address his remaining assignments of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Walters v. Sporer*, 298 Neb. 536, 905 N.W.2d 70 (2017).

## CONCLUSION

We conclude that the trial court violated Stewart's due process rights when it did not allow him to participate in the trial by telephone. Accordingly, we reverse, and remand for a new trial.

Reversed and remanded for a new trial.