Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/21/2018 08:08 AM CST

Eagle Partners, L.L.C., doing business as Keller Williams
Greater Omaha, doing business as Keller Williams
Realty, a Nebraska limited liability company,
appellee and cross-appellant, v. Donna L. Rook,
Successor Personal Representative of the
Estate of Donald H. Lienemann,
appellant and cross-appellee.

___ N.W.2d ___

Filed December 21, 2018.    No. S-18-058.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

4. **Pleadings: Appeal and Error.** An appellate court reviews a district court's denial of a motion for leave to amend a complaint for an abuse of discretion.

5. **Judgments: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.

6. **Decedents' Estates: Attorney Fees.** In probate proceedings, attorney fees are administration expenses.

7. **Decedents' Estates: Claims: Costs: Fees.** Administrative expenses are claims which may be brought under the probate claims procedure.

8. **Contracts: Intent.** When a contract is unambiguous, the intentions of the parties must be determined from the contract itself.

9. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

10. **Contracts.** A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.

11. **Waiver: Words and Phrases.** A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct.

12. **Waiver: Estoppel.** Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part.

13. **Contracts: Waiver.** A party may waive a written contract in whole or in part, either directly or inferentially.

14. **Contracts: Waiver: Proof.** A party may prove the waiver by (1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to induce the belief that it intended to waive.

15. **Contracts: Intent.** A court ordinarily must use construction that gives effect to each part of a contract, and reject constructions resulting in a determination that a word or term is surplusage.

16. **Standing: Jurisdiction.** Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.

17. **Claims: Parties.** Generally, a litigant must assert the litigant's own rights and interests, and cannot rest a claim on the legal rights or interests of third parties.

Appeal from the District Court for Sarpy County: William B. Zastera and Stefanie A. Martinez, Judges. Reversed and remanded with directions.

James T. Boler, P.C., L.L.O., for appellant.

W. Patrick Betterman, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Eagle Partners, L.L.C., doing business as Keller Williams Greater Omaha, doing business as Keller Williams Realty, a Nebraska limited liability company (Keller), filed suit against Donna L. Rook, successor personal representative of the estate of Donald H. Lienemann (the Estate), in the district court for Sarpy County, Nebraska. The district court granted summary judgment in Keller's favor, finding that Keller had established that the Estate breached a contract involving the sale of real property.

The district court awarded Keller damages in the amount of $97,473.60, plus prejudgment interest at the legal rate of 12 percent per annum from and after December 30, 2016. We removed this case to our docket pursuant to our authority under Neb. Rev. Stat. § 24-1106(3) (Supp. 2017). We reverse the decision of the district court and remand the cause with directions to enter summary judgment in favor of the Estate.

## BACKGROUND

In late October 2012, the attorney for the Estate was contacted by John Q. Bachman offering to purchase approximately 77 acres of land owned by the Estate on behalf of his clients John C. Allen and Jerry Torczon. Bachman sought to purchase the land, legally described as "South Half(S1/2) of the Southeast Quarter (SE1/4), except ROW in 2-13- 12 (77.36 acres), commonly known as 7406 Capehart Road, Papillion, NE 68046." Ultimately, the Estate and Bachman were unable to close on the sale due to a condition allowing Allen and Torczon to "terminate this Agreement if . . . Purchaser has been unable to move the Property into the Papillion-La Vista School District from the South Sarpy School District . . . ."

On November 17, 2014, the Estate and Keller entered into a uniform commercial listing contract for sale with an attached one-page addendum (listing), allowing Keller to list and offer the property for sale. Keller was to list and offer the property for sale for $3,017,040 during the period commencing

November 17, 2014, and ending November 17, 2015. The addendum to the November 17, 2014, listing specified, under paragraph 23, that Bachman, Allen, or Torczon were "No Commission Buyers," further indicating that "Seller shall not be obligated to pay Broker any sales commission on account of a sale made to one or more of these prospective buyers." Pursuant to a January 13, 2016, addendum, the expiration of the listing was extended to January 1, 2017.

On March 20, 2015, Bachman submitted to the Estate's attorney a second written offer for the property, again on behalf of Allen and Torczon. However, the offer contained the same previously failed condition that the school district be changed. As such, the offer was rejected by the Estate.

On April 11, 2016, Bachman submitted a third offer directly to the Estate on behalf of his clients, this time for $42,000 per acre and with no school district condition, but that offer expired without being accepted. On or about April 14, however, the attorney for the Estate told Debra Carlson, Keller's agent, about this offer and recommended that Keller represent any potential purchasers. The attorney further instructed Carlson that any offer presented by Keller must not contain conditions requiring redistricting the property's school district.

On April 27, 2016, Keller submitted an offer on behalf of Cedevco, Inc., to purchase the property for $3,017,040. Contained in the offer were several conditions, including one with respect to the school district, which the Estate found unacceptable. As such, the offer was rejected.

On May 23, 2016, the Estate and Bachman signed a purchase agreement for the sale of the property. The purchase agreement, prepared by Bachman, contained a provision in paragraph 27 concerning brokers. Paragraph 27 states:

> **Brokers**. Seller represents that . . . Carlson of Keller . . . is representing Seller for this transaction. Purchaser is not represented by a real estate broker and . . . Carlson of Keller . . . shall be entitled to the real estate commission

pursuant to a separate agreement with Seller. Each party represents to the other that no other broker, finder or intermediary is involved in the purchase and sale of the Property. Each party hereby indemnifies and agrees to hold the other party harmless from and against any and all costs arising or resulting, directly or indirectly, out of any claim by any broker or finder in connection with this transaction due to their respective acts.

The sale closed on December 30.

On December 29, 2016, Keller filed a statement of claim for its commission in the probate proceedings of the Estate pending in Sarpy County Court. In response, the Estate disallowed the claim.

Keller then filed a complaint in Sarpy County District Court seeking to enforce paragraphs 4 and 22 of the listing agreement, and seeking $90,511.20 as the commission due on the Cedevco offer that the Estate had rejected. Keller subsequently filed an amended complaint to enforce paragraph 27 of the purchase agreement and commission of $97,473.60, or 3 percent of the purchase price of $3,249,120, negotiated by Bachman and paid by Allen and Torczon.

In its answer, the Estate alleged that the district court lacked subject matter jurisdiction of an action seeking a real estate commission. It alleged that because such a commission was an expense of the administration of the Estate that resulted from a contract entered into by the personal representative of the Estate, it should be heard by the probate court.

The parties filed cross-motions for summary judgment. On September 26, 2017, the district court found that Keller had produced sufficient evidence to establish a prima facie case that by the terms of the purchase agreement, specifically paragraph 27, Keller was entitled to a commission. The court indicated that the Estate failed to offer sufficient evidence to rebut Keller's prima facie case. The district court then granted Keller's motion for summary judgment and denied the Estate's.

The Estate and Keller filed cross-motions to alter or amend the opinion and order. The Estate's motion essentially sought a reversal of the district court's decision, while Keller's motion requested that the court amend the judgment to include an award of attorney fees, costs, and litigation expenses incurred with regard to this action pursuant to Neb. Rev. Stat. § 25-824(2) (Reissue 2016). The court denied both motions.

The Estate appeals, and Keller cross-appeals.

## ASSIGNMENTS OF ERROR

The Estate assigns that the district court erred in (1) finding that it had subject matter jurisdiction, (2) entering summary judgment in Keller's favor, (3) failing to grant the Estate's motion for summary judgment seeking dismissal of the amended complaint, and (4) awarding Keller interest on the judgment as an expense of administration.

On cross-appeal, Keller assigns that (1) the district court abused its discretion in denying its request for attorney fees and costs pursuant to § 25-824 and (2) Neb. Rev. Stat. § 25-2705 (Reissue 2016) violates Neb. Const. art. I, § 6, because the statute grants a right to trial by jury for cases in the county court, but fails to provide a right to demand a jury trial for "any matter arising under the Nebraska Probate Code."

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that

---

[1] *Bixenmann v. Dickinson Land Surveyors*, 294 Neb. 407, 882 N.W.2d 910 (2016), *modified on denial of rehearing* 295 Neb. 40, 886 N.W.2d 277.

party the benefit of all reasonable inferences deducible from the evidence.[2]

[3] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[3]

[4,5] We review a district court's denial of a motion for leave to amend a complaint for an abuse of discretion.[4] A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.[5]

## ANALYSIS

*Subject Matter Jurisdiction Based*
*on Statutory Interpretation.*

In its first assignment of error, the Estate contends that the district court lacked subject matter jurisdiction over Keller's claim because the claim arose out of a real estate commission pursuant to the listing Keller entered into with the personal representative. The Estate argues that the case is governed by Neb. Rev. Stat. § 30-2482 (Reissue 2016), which provides:

(1) After notice to all interested persons or on petition of an interested person or on appropriate motion if administration is supervised, the propriety of employment of any person by a personal representative including any attorney, auditor, investment advisor, or other specialized agent or assistant, the reasonableness of the compensation of any person so employed, or the reasonableness of the compensation determined by the

---

[2] *Id.*

[3] *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016).

[4] See *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007). See, also, *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011).

[5] *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

personal representative for his or her own services, may be reviewed by the court. Any person who has received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds.

The Estate claims § 30-2482 exclusively governs probate proceedings for review of employment and compensation of specialized agents. Keller disputes that its claim is governed by § 30-2482, and instead argues this claim arises under Neb. Rev. Stat. § 30-2486 (Reissue 2016):

Claims against a decedent's estate may be presented as follows:

(1) The claimant may file a written statement of the claim, in the form prescribed by rule, with the clerk of the court. The claim is deemed presented on the filing of the claim with the court. If a claim is not yet due, the date when it will become due shall be stated. If the claim is contingent or unliquidated, the nature of the uncertainty shall be stated. If the claim is secured, the security shall be described. Failure to describe correctly the security, the nature of any uncertainty, and the due date of a claim not yet due does not invalidate the presentation made.

(2) The claimant may commence a proceeding against the personal representative in any court which has subject matter jurisdiction and the personal representative may be subjected to jurisdiction, to obtain payment of his or her claim against the estate, but the commencement of the proceeding must occur within the time limited for presenting the claim. No presentation of claim is required in regard to matters claimed in proceedings against the decedent which were pending at the time of his or her death.

(3) If a claim is presented under subsection (1), no proceeding thereon may be commenced more than sixty days after the personal representative has mailed a notice of disallowance; but, in the case of a claim which is not

presently due or which is contingent or unliquidated, the personal representative may consent to an extension of the sixty-day period, or to avoid injustice the court, on petition, may order an extension of the sixty-day period, but in no event shall the extension run beyond the applicable statute of limitations.

Keller argues the claim was properly filed in county court pursuant to § 30-2486(1) and, upon the Estate's § 30-2486(3) disallowance, was properly contested in the district court.[6]

The Estate directs our attention to *In re Estate of Wagner*.[7] In that case, a law firm filed a claim under § 30-2486 seeking additional attorney fees following services rendered to the estate. The county court noted that the firm's claim was made under § 30-2486, but did not address the propriety of that procedure, instead concluding that there was no merit to the claim. On appeal, following affirmation of the county court's decision and reviews by the district court and the Nebraska Court of Appeals, we stated:

> In order to prevent confusion in the future, we hold prospectively that all claims for attorney fees in probate matters from the date of this opinion forward shall be reviewed by the county court pursuant to § 30-2482 and shall not be submitted as claims under the Nebraska Probate Claims statute, § 30-2486.[8]

[6,7] But the language of § 30-2482 does not preclude using the probate claims procedure established in Neb. Rev. Stat. §§ 30-2483 through 30-2498 (Reissue 2016). Those sections deal with the presentation, allowance, and payment of creditor's claims.[9] "Claim" as defined by the Nebraska Probate Code includes "liabilities of the decedent or protected person

---

[6] See *Holdrege Co-op Assn. v. Wilson*, 236 Neb. 541, 463 N.W.2d 312 (1990).

[7] *In re Estate of Wagner*, 253 Neb. 498, 571 N.W.2d 76 (1997).

[8] *Id.* at 502, 571 N.W.2d at 79.

[9] *Kerrigan & Line v. Foote*, 5 Neb. App. 397, 558 N.W.2d 837 (1997).

whether arising in contract, in tort or otherwise, and liabilities of the estate which arise at or after the death of the decedent or after the appointment of a conservator, including funeral expenses and *expenses of administration.*"[10] We have traditionally held that in probate proceedings, attorney fees are administration expenses.[11] Real estate brokers, like attorneys, must be licensed in the State of Nebraska. Those seeking to act as brokers must meet the qualifications listed in Neb. Rev. Stat. § 81-885.13 (Supp. 2017) and further conform to the requirements established by the Legislature. Like attorney fees, broker's fees arising from the sale of real estate held in the course of probate proceedings are similarly an administration expense. Therefore, based on a plain reading of the relevant statutes, it appears that such administrative expenses are claims which may be brought under the probate claims procedure.

The Nebraska probate statutes are derivative of the Uniform Probate Code, which was generally adopted by the Legislature in 1974 and became effective in the state on January 1, 1977. The comment to § 3-105[12] of the Uniform Probate Code indicates that the responsibility for hearing and deciding formal petitions is to be assigned to the court of general jurisdiction of each county or district, further noting that there is "little basis for objection to the broad statement of concurrent jurisdiction of [§ 3-105]."

As adopted by the Nebraska Legislature, § 3-105, now Neb. Rev. Stat. § 30-2405 (Reissue 2016), was stripped of restrictive language regarding subject matter jurisdiction. Section 30-2405 was designed to give probate courts of limited jurisdiction broad concurrent jurisdiction with courts of general jurisdiction. We believe that is what the Nebraska Legislature

---

[10] Neb. Rev. Stat. § 30-2209(4) (Reissue 2016) (emphasis supplied).

[11] See *In re Estate of Reimer*, 229 Neb. 406, 427 N.W.2d 293 (1988). See, also, *In re Estate of Chrisp*, 276 Neb. 966, 759 N.W.2d 87 (2009); *J.R. Simplot Co. v. Jelinek*, 275 Neb. 548, 748 N.W.2d 17 (2008).

[12] Unif. Probate Code § 3-105, comment, 8 (part II) U.L.A. 33-34 (2013).

did in adopting Nebraska's version of the Uniform Probate Code. In other words, §§ 30-2405 and 30-2482 are part of a scheme to give jurisdiction for the enforcement of probate claims to the county court, and that jurisdiction is concurrent with the jurisdiction of the district court to enforce such claims. To the extent that *In re Estate of Wagner* holds differently, it is dicta and disapproved.

In this case, Keller could have pursued the enforcement of its claim in either the district court or the county court. Keller chose the district court. The district court had jurisdiction to decide the validity of Keller's claim.

### Constitutional Challenge to County Court's Exclusive Jurisdiction.

For the first time on appeal, Keller raises two constitutional challenges to the Estate's argument that § 30-2482 provides an exclusive grant of jurisdiction to the county court over its chancery and common-law claims. As we have found that Keller was entitled to pursue its claim in the district court, we need not address Keller's constitutional challenges.

### Summary Judgment.

The Estate assigns that the district court erred in granting summary judgment in favor of Keller and in denying summary judgment in the Estate's favor. We agree.

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

[8-10] When a contract is unambiguous, the intentions of the parties must be determined from the contract itself.[13] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable

---

[13] *Properties Inv. Group v. Applied Communications*, 242 Neb. 464, 495 N.W.2d 483 (1993).

but conflicting interpretations or meanings.[14] Further, a court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.[15]

We turn first to the language of the listing and purchase agreements. The listing gave Carlson the right to list the property in question. If Carlson were to find a ready, willing, and able buyer for the property, she would be entitled to a 5-percent commission if the sale was made to a represented purchaser and a 3-percent commission if it was not. But paragraph 23 of the listing provided that Bachman, Allen, or Torczon were "No Commission Buyers," further indicating that "Seller shall not be obligated to pay Broker any sales commission on account of a sale made to one or more of these prospective buyers."

In the end, the property in question was sold to the "No Commission Buyers" identified in the listing. The purchase agreement for that sale, which was prepared by the purchasers, provided that the Estate "represent[ed] that . . . Carlson of Keller [was] representing Seller for this transaction. Purchaser is not represented by a real estate broker . . . ." Paragraph 27 of the purchase agreement stated that Carlson should be paid pursuant to a separate agreement. Though "separate agreement" is not explicitly defined, the record indicates that it could only mean the listing between the Estate and Keller.

The only reasonable reading of paragraph 27 of the purchase agreement in conjunction with the listing demonstrates that under paragraph 27, Keller is not entitled to a commission according to the terms of the listing. Under paragraphs 4 and 22, the Estate agreed to pay Keller a 3-percent commission if the purchaser was not represented in the purchase and a 5-percent commission if the purchaser was represented.

---

[14] *In re Estate of Balvin*, 295 Neb. 346, 888 N.W.2d 499 (2016).

[15] *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994).

Specifically, the handwritten portion of paragraph 22 states, "Or 3% if seller agent broker [Carlson] is the only broker represent[ing] both seller & buyer."

However, paragraph 23, executed contemporaneously with the listing, states in relevant part, "Seller shall not be obligated to pay Broker any sales commission on account of a sale made to one or more of these prospective buyers." Just above the quoted language, the names "John Q. Bachman, Trustee"; "John C. Allen"; and "Jerry Torczon" are listed and identified as "No Commission Buyers." Reading these terms together, we find that the Estate and Bachman agreed that Keller would be paid according to the terms of the listing. The terms of the listing in turn provide that Keller, under the circumstances, is not entitled to payment.

Keller makes several arguments suggesting that contrary to the plain language of these agreements, it is entitled to a commission. Keller first contends that paragraph 27 of the purchase agreement operated as a waiver of paragraph 23, entitling them to a commission under paragraphs 4 and 22.

[11-14] A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct.[16] Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part.[17] A party may waive a written contract in whole or in part, either directly or inferentially.[18] A party may prove the waiver by (1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to induce the belief that it intended to waive.[19]

---

[16] *D & S Realty v. Markel Ins. Co.*, 280 Neb. 567, 789 N.W.2d 1 (2010).

[17] *Id.*

[18] *Id.*

[19] *Id.*

Based on paragraph 27 of the purchase agreement, we cannot conclude that the Estate made a clear, unequivocal, and decisive act demonstrating an intent to waive paragraph 23 of the listing which identified the "No Commission Buyers." Keller's waiver argument is without merit.

In the alternative, Keller argues, it is a third-party beneficiary under the purchase agreement. Keller directs us to our decision in *Mid-Continent Properties, Inc. v. Pflug*.[20] In *Pflug*, we determined that although there was not a direct contract between a broker and landowners as contemplated by Neb. Rev. Stat. § 36-107 (Reissue 1974), a contract in which the broker is a third-party beneficiary did exist. In *Pflug*, the broker entered into an oral agreement for payment of a commission upon the sale of the landowners' property. The landowners entered into a written sales agreement that contained a payment provision for the broker's commission. When the commission was not paid, the broker initiated an action as a third-party beneficiary under the sales agreement.

Assuming arguendo that the court below relied on the theory that Keller was a third-party beneficiary, we turn to the provisions of the respective agreements and find that when read together, the purchase agreement and the listing are unambiguous in directing that no commission is due to Keller under paragraph 23. Therefore, assuming that the sale of the land triggered a commission being paid to Keller, Keller is not entitled to the commission because under the clear and unambiguous terms of paragraph 23, Keller is not entitled to a commission upon the sale of the land to Bachman or the other "No Commission Buyers."

[15] Keller also argues that "where there are two descriptions in an instrument, one of which describes the subject matter with reasonable certainty and the other that is incorrect with respect to certain additional details, the incorrect portion

---

[20] *Mid-Continent Properties, Inc. v. Pflug*, 197 Neb. 429, 249 N.W.2d 476 (1977).

of the description will be rejected as surplusage."[21] However, the authority upon which Keller relies further observes that "a court ordinarily must use construction that gives effect to each part of a contract, and reject constructions resulting in a determination that a word or term is surplusage."[22]

The contract is unambiguous in this case, and Keller is not entitled to a commission under paragraph 23. Therefore, we find that the court below erred in granting summary judgment in favor of Keller and remand the cause to the district court with instructions to enter summary judgment in favor of the Estate.

*Keller Seeks Equitable Estoppel.*

Keller attempts to argue that in conducting negotiations for the sale of the property, the Estate misrepresented its business relationship with Keller in order to gain an advantage in negotiations with Bachman. Keller refers to the Estate's negotiation tactics as a form of fraudulent "sharp dealing."[23] Keller therefore contends that the Estate's "sharp dealing" with Bachman should be equitably estopped by enforcing the payment provision in Keller's favor. However, Keller lacks standing to make such an argument.

[16,17] Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.[24] Thus, generally, a litigant must assert the litigant's own rights and interests and cannot rest a claim on the legal rights or interests of third parties.[25] Keller has not suffered any injury as a result of the

---

[21] See 17A C.J.S. *Contracts* § 418 at 310 (2011).

[22] See *id.*

[23] Brief for appellee at 34.

[24] *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010).

[25] *Id.*

Estate's negotiation tactics that Keller characterizes as fraudulent "sharp dealing."

*Award of Interest and Attorney Fees.*

Keller contends on cross-appeal that the district court erred in denying its motion for attorney fees and prejudgment interest. Because we find that the summary judgment entered in Keller's favor was entered in error, we need not address this assignment of error further.

## CONCLUSION

The district court erred in granting summary judgment in favor of Keller and in denying summary judgment in favor of the Estate. We therefore reverse the decision of the district court and remand the cause with directions to enter summary judgment in favor of the Estate.

REVERSED AND REMANDED WITH DIRECTIONS.