IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


DAVIS V. HAIDUL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


TARSHA MARIE DAVIS, APPELLEE,

V.

JOHN T. HAIDUL II, APPELLANT.


Filed August 13, 2019.    No. A-18-861.


Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Affirmed.

John T. Haidul II, pro se.

James Walter Crampton for appellee.


MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

This is an appeal from an order entered by the district court for Cass County denying a motion to modify a child custody order. The original order was entered by the Family Court of St. Louis County, Missouri, in 2008 and transcribed to Cass County in 2013. For the reasons stated below, we affirm.

## BACKGROUND

Tarsha Marie Davis and John T. Haidul II, were formerly married. While Haidul was in jail in St. Louis County, Missouri, Davis sought a dissolution of the marriage, distribution of the marital assets and obligations, and custody of the two children born to the marriage. On February 25, 2008, the Family Court of St. Louis County entered a decree dissolving the marriage and awarding sole custody of the two children to Davis. The court specifically found that since Haidul was incarcerated in the St. Louis County jail and had "three pending felony cases currently pending

against him with four felony counts in two counties" it was in the best interests of the children that Davis be allowed to move to Nebraska where she had extended family and support. Since the court permitted Davis to move, it ordered her to provide her new address and phone numbers for the children to Haidul. The court awarded visitation to Haidul pursuant to a parenting plan which included telephone calls on Thursday evenings. At the time of trial (July 9, 2018), the children were aged 13 and 16. Since the entry of the original decree Haidul has been sentenced on multiple bank robbery convictions and will remain in the custody of the Missouri Department of Corrections for many years.

After moving to Omaha originally in May 2008, Davis relocated to Cass County. Davis filed a petition to register the original decree and custody order in Cass County on November 18, 2013. The Cass County District Court granted the registration request on February 26, 2014. On November 30, 2017, Haidul filed a petition in the Cass County District Court to modify the original custody and visitation order alleging Davis had interfered with his ability to communicate with his children by failing to give him 60 days advance notice of any change of address and failing to share health and education information related to the children. An evidentiary hearing on Haidul's motion to modify was set for July 9, 2018, and Haidul was given permission to appear by telephone "subject to the provisions of Neb. Rev. Stat. [§] 24-303(2)" (Reissue 2016).

Section 24-303(2) provides:

All nonevidentiary hearings, and any evidentiary hearings approved by the district court *and by stipulation of all parties that have filed an appearance*, may be heard by the court telephonically or by videoconferencing or similar equipment at any location within the judicial district as ordered by the court and in a manner that ensures the preservation of an accurate record. Such hearings shall not include trials before a jury. Hearings conducted in this manner shall be consistent with the public's access to the courts.

(Emphasis supplied.)

During a pretrial conference held on July 9, 2018, for the purpose of marking and receiving exhibits, Haidul asked for leave to "testify telephonically." Counsel for Davis objected. The court advised Haidul that under those circumstances the court did not have authority to permit Haidul to testify. The court advised Haidul that an exception to the hearsay rule would permit Haidul to offer an affidavit over a hearsay objection because Haidul was considered "unavailable." The court advised Haidul that some other objection might apply but such an offer would survive a hearsay objection. Haidul then offered a 16-page affidavit as exhibit 27. Counsel for Davis objected to exhibit 27 for the reason most of the representations were not within Haidul's personal knowledge, the document contained legal citations and discussion of cases, and portions of the document were "unreadable." The court took exhibit 27 under advisement in order to determine which parts, if any, could be admitted. No ruling on whether the affidavit or any portion of it would be received, was ever made. Haidul does not complain about this fact.

Haidul had prepared a proposed modified parenting plan which he had marked as exhibit 29. However, he did not offer the exhibit into evidence.

Following the pretrial conference, testimony was taken from Davis. On direct examination Davis testified that her children are afraid of Haidul and they are not interested in reading his

letters. Davis also testified she often reads the letters aloud to the children even though they tell her not to bother. Davis testified under cross-examination that the children "don't even want me to read the letters . . . and they don't want to physically talk" to Haidul. Davis also testified that since the entry of the original decree in February 2008, Haidul had done nothing to benefit the children. Arguments were made to the court and the matter was taken under advisement.

On July 19, 2018, the court denied Haidul's motion for modification of the original custody and visitation order. The district court concluded there was evidence that Davis was noncompliant with the visitation order on occasion by failing to keep Haidul informed about her changes in address or failing to provide school information. While this behavior frustrated Haidul's efforts to maintain a relationship with the children and should not be condoned, the court said Davis was not an "unfit" parent. The court went on to say that now that the children were teenagers the children themselves may be reluctant to engage in visitation with Haidul. The burden was on Haidul to prove a "material change in circumstances" justifying a modification of the original order and since he was still in prison and was expected to be for some time, he had failed to persuade the court any modification was warranted.

On July 30, 2018, Haidul filed a motion to alter or amend the court's judgment for the reason there was sufficient evidence presented to establish a material change in circumstances. Hearing was held on August 17. The court overruled Haidul's motion to alter or amend its prior judgment, finding the order entered on July 19 was supported by sufficient evidence and Haidul failed to meet his burden of showing a material change in circumstances.

Haidul appeals from the court's order of July 19, 2018.

## ASSIGNMENTS OF ERROR

We have condensed and restated Haidul's assignments of error. Haidul asserts his due process rights were violated because he was not allowed to testify telephonically. Additionally, Haidul complains the district court erred in failing to modify the custody decree in part because Davis frustrated his relationship with the children and because it excluded from evidence docket sheets, certified mail receipts, a transcript from an appeal of the original divorce action, and pictures of Father's Day gifts he received while the parties were still married.

## STANDARD OF REVIEW

Whether the procedures given an individual comport with constitutional requirements for procedural due process is a question of law, which we independently review. *In re Interest of Landon H.*, 287 Neb. 105, 841 N.W.2d 369 (2013).

When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, we review the admissibility of evidence for an abuse of discretion. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value. *Id.*

Visitation rights established by a marital dissolution decree may be modified upon a showing of a material change of circumstances affecting the best interests of the children. Such modification is initially entrusted to the discretion of the district court, whose decision is reviewed

de novo on the record and will normally be affirmed absent an abuse of discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001).

## ANALYSIS

### DUE PROCESS

The U.S. and Nebraska Constitutions provide that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amends. V and XIV; Neb. Const. art. I, § 3. In *In re Interest of L.V.*, 240 Neb. 404, 413-14, 482 N.W.2d 250, 257 (1992), quoting *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), the Nebraska Supreme Court stated:

> "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard. . . .'" When a person has a right to be heard, procedural due process includes notice to the person whose right is affected by a proceeding, that is, timely notice reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

Although it is clear that a prisoner has no absolute constitutional right to be released from prison so that he can be present at a hearing in a civil action, *Wilson v. Wilson*, 238 Neb. 219, 469 N.W.2d 750 (1991), and that due process does not require the appointment of counsel to represent the prisoner in a private civil matter, *Caynor v. Caynor*, 213 Neb. 143, 327 N.W.2d 633 (1982), due process does require that the prisoner receive meaningful access to the courts to defend suits brought against him or her or to protect some fundamental right.

"[M]eaningful access to the courts" in this case included Haidul's opportunity to participate by telephone in a hearing scheduled on his motion. This was not a case where he was defending against charges or a loss of some right or other interest. Instead, he was seeking to modify his visitation with his children. During the pretrial conference immediately preceding the trial Haidul learned he would not be allowed to "testify" because Davis objected pursuant to § 24-303(2). Nevertheless, Haidul retained the ability to offer exhibits in support of his request that the original visitation order be modified; he was able to argue about objections to his exhibits; he was permitted the opportunity to cross-examine Davis following her testimony, and, he was able to make a closing argument. The courts are not compelled to ensure inmates are able to litigate effectively once they have filed an action. Rather, the courts are only obligated to make the opportunity available. See *Payne v. Nebraska Dept. of Corr. Servs.*, 288 Neb. 330, 848 N.W.2d 597 (2014). The inability to "testify" is simply one of the incidental and perfectly constitutional consequences of conviction and incarceration. See *In re Estate of Newman*, 25 Neb. App. 771, 913 N.W.2d 744 (2018), citing *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

What Haidul failed to do, and this was within his power, was prove by a preponderance of the evidence that his or Davis' circumstances had materially changed since 2008 which warranted some modification to the original visitation order. Haidul was in jail in 2008 awaiting resolution of his criminal matters. In 2018, Haidul was still in prison and by this time the children were teenagers and had expressed unwillingness to have contact with Haidul. See *Marez v. Marez*, 217 Neb. 615, 350 N.W.2d 531 (1984) (change of circumstances not to be construed mechanically; rather children's happiness, their psychological adjustment, and their own wishes are as much entitled to consideration as changes in material environment). Haidul had an opportunity to present his side of the case in spite of not being allowed to testify. See *Board of Regents v. Thompson*, 6 Neb. App. 734, 577 N.W.2d 749 (1998) (due process violated when prisoner denied opportunity to present her side of the case; request for telephone hearing was denied). The district court found Davis' testimony that the children were reluctant to have contact with Haidul to be persuasive and considered her judgment about what is in their best interests to be controlling. Haidul was simply unable to overcome those facts. We conclude Haidul's due process rights were not violated, nor did he suffer any prejudice, by the district court's failure to consider or admit various exhibits based on lack of relevance and other objections. And in view of Davis' objection to receiving testimony telephonically, the court acted appropriately in denying him the opportunity to testify.

## MODIFICATION

Haidul was given meaningful access to the courts and still he did not meet his burden of proving a material change in circumstances or that a modification was in the best interests of the children. Customarily, orders related to custody of, and visitation with, minor children will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the children require such action. *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013). A material change in circumstances means, the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.* Changes in circumstances which were within the contemplation of the parties at the time of the decree are not material changes in circumstances for purposes of modifying a divorce decree. *Id.*

At the time of the original decree, the district court knew Haidul was incarcerated and since sentencing had not yet occurred, the potential for him to be in prison for some time was something the court understood. As a result of this fact, the court specifically permitted Davis to relocate to Nebraska where she had family and support. The court provided for telephone and written communication by asking Davis to keep Haidul apprised of her contact information. Davis acknowledged she was not as diligent as she should have been about keeping Haidul posted of her whereabouts but this alone does not amount to "unfitness." In *State on behalf of Savannah E. & Catilyn E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013), the court said considerations of unfitness may include the respective living situations of each parent, the ability to provide care, the ability to meet the child's safety, stability and educational needs, and the emotional relationship a child has with each parent. There was no evidence that Davis was failing the children in any way. Rather, there was testimony that Haidul had not done anything since 2008 to directly benefit the children. While Haidul complains Davis frustrated his relationship with the children, that is neither

unfitness nor a change in circumstances. Courts dissolving marriages and awarding custody of children understand the adult parties have trouble getting along. See *McDonald v. McDonald, supra*. The only evidence in the record on any of these factors was Davis' testimony that the children did not want to have telephone contact with Haidul and they did not read his letters.

We do not find any abuse of discretion by the district court since the order denying modification was not based upon reasons that are untenable or unreasonable, nor was its action clearly against justice or conscience, reason, and evidence. See *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001). Instead, the denial of Haidul's modification request was based on the court's finding that there had been no material change in circumstances; specifically, that the Missouri court was aware of Haidul's incarceration when entering the initial parenting plan and that Davis' failure to always comply with that plan did not amount to parental unfitness and, therefore, did not serve as a basis for modification.

## CONCLUSION

Haidul failed to prove that any of the material circumstances known to the court in St. Louis County, Missouri, at the time of the entry of the original custody and visitation order had changed by the time he filed his motion to modify the order in Cass County. Further, Haidul failed to prove Davis is unfit or that the best interests of their children warrant modification. Accordingly, the order of the district court denying Haidul's motion to modify the original custody and visitation order is affirmed.

AFFIRMED.