276 Neb. 966
In re Estate of Dean E. Chrisp, deceased.
Gail A. Chrisp, Appellant,
v.
Lynn E. Chrisp et al., Appellees.
No. S-07-1089.
Supreme Court of Nebraska.
Filed January 2, 2009.
Lowell J. Moore and James C. Bocott, of McCarthy, Pederson & Moore, for appellant.
Royce E. Norman and Stephen P. Herman, of Norman, Paloucek & Herman Law Offices, for appellees Lynn E. Chrisp and Kent A. Chrisp.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

I. SUMMARY
This is a dispute between Gail A. Chrisp, the surviving spouse of Dean E. Chrisp (Chrisp), and two of Chrisp's sons from his earlier marriage. The sons became the trustees of Chrisp's revocable trust after his death. Before his marriage to Gail, Chrisp had transferred the bulk of his assets to the trust. In his will, Chrisp devised all his property to Gail. Gail, how ever, petitioned for an elective share of the augmented estate. She claimed that the premarital trust assets were included in the augmented estate.
This appeal presents the issue whether the assets from a pre marital trust must be included in the augmented estate for cal culating a surviving spouse's elective share. The district court concluded that the trust assets were not included. We agree. Under Neb. Rev. Stat. § 30 2314 (Reissue 1995), only the decedent's transfers to others during the marriage are included in the augmented estate for calculating a surviving spouse's elective share. We hold that Chrisp's premarital transfers to his revocable trust were not part of the augmented estate for calcu lating Gail's elective share. We affirm.

II. BACKGROUND
In November 2000, Chrisp created the Dean E. Chrisp Revocable Trust. The beneficiaries are his four children. He named his sons, Lynn E. Chrisp and Kent A. Chrisp, as suc cessor cotrustees. In December 2002, Gail and Chrisp married without a prenuptial agreement. In April 2004, Chrisp amended his trust. First, he removed as trust beneficiaries two stepchil dren from a previous marriage; second, he named Gail as a successor cotrustee also. Gail is not a trust beneficiary. Also in 2004, he created a new will devising all of his property to Gail. The will named Gail, Kent, and Lynn as copersonal representa tives. Chrisp died in September 2004.
Kent and Lynn agreed to allow Gail to act as the sole per sonal representative in a supervised administration, but she was removed as a cotrustee. The record does not explain that action, but a provision in the trust permitted the beneficiaries to remove a cotrustee by vote. In February 2005, Gail filed a petition for formal probate in a supervised administration. In March 2005, the county court admitted Chrisp's will to probate, and Gail accepted appointment as the estate's personal representative. In May, she filed a petition for an elective share.
In July 2005, in the probate proceeding, Gail, acting as personal representative, notified the trustees that the probate estate was inadequate to pay statutory allowances and that they would be liable for the obligation if they distributed assets from the trust.[1]
Later, in August 2005, the court ordered an assessment against the trust for the statutory allowances, but this issue is not part of this appeal. Also in August, the court discharged Gail as personal representative and appointed a third party, attorney Richard A. Birch.
In September 2005, Gail filed a demand against Birch to initiate a proceeding against the trust to determine its liability under § 30-3850(a)(3). This statute authorizes a personal rep resentative to seek funds from the decedent's revocable trust for statutory allowances, expenses, costs, and claims against the estate if the estate is inadequate. Gail alleged that claims against the estate included a petition for an elective share. Birch timely commenced a proceeding against the trustees in September. But because he was not sure whether he should file a petition in the probate proceeding or the trust proceeding, he filed identical petitions in both. In each petition, he sought an order directing the trustees to pay for "claims, costs of administration, expenses, allowances, and elective share" to the extent that the estate's assets were inadequate.
In October 2005, at the hearing on the augmented estate, the parties disputed the estate's assets. They also submit ted a stipulation acknowledging that Birch would file an amended inventory, valuing the estate's assets and the trust's assets. The stipulation showed that Birch valued Chrisp's estate at $842,185. But he included in that total $666,503 of trust assets.
In December 2005, in the probate proceeding, the court rejected Gail's argument that the augmented estate included the premarital trust assets. The court had reviewed the committee statements in the legislative history of Nebraska's augmented estate statute. It concluded that the Legislature had specifi cally drafted § 30-3850(a)(1) so that the assets of premarital trusts would not be included in the augmented estate. The court relied on committee statements that excluding premarital trusts would allow a father to leave his business to his sons before remarrying. This type of transfer would permit the sons to improve the business without worrying about the value of their efforts becoming part of the augmented estate.
In June 2006, the court conducted a final hearing on the remaining motions and issues. The court recognized that there was a separate trust proceeding, but it concluded it could merge the two cases for that hearing. In July, the court issued a consolidated order "[f]or judicial economy." It denied Gail's motion for continued support payments and took all other mat ters under advisement pending briefing.

1. County Court Issues Final orders in Both proceedings
In September 2006, the court issued separate but identical orders in the probate proceeding and the trust proceeding. In each order, the court specifically stated that it consid ered its order final. It adopted the trustees' calculation of the augmented estate; it granted Birch attorney fees, to be later assessed against the trust; and it awarded Gail $6,930 for attorney fees while she was the personal representative. Gail appealed from the probate order. The Court of Appeals dismissed the appeal for lack of a final order in a special proceeding.
In April 2007, in the trust proceeding, the trustees moved for a final order. The same month, the court entered a second final order in the trust proceeding, which was effectively the same as its September 2006 order. But in this order, the court specifically stated that all issues raised by Birch's petition had been resolved and that the trust proceeding was closed. Gail did not appeal from this order. In the probate proceeding, there remained some claims against the estate which the court resolved in May.
In August 2007, Birch filed a petition for a final settlement of the probate proceeding, a petition to determine inheritance taxes, and his final accounting. In October, the court assessed taxes, approved Birch's final accounting, awarded him attorney fees from the trust assets, and entered a decree of final discharge. Gail appealed from the final probate order.
On appeal, the trustees moved for summary dismissal, arguing that this court lacked jurisdiction because Gail had not appealed from the April 2007 final order in the trust proceed ing. They argued that because the April 2007 order was final and Gail had failed to appeal from that order, res judicata precluded her appeal in the probate proceeding. In granting the trustees' motion to bypass, this court simultaneously denied their motion for summary dismissal, without prejudice, subject to reconsideration after hearing the appeal.

III. ASSIGNMENTS OF ERROR
Gail assigns, condensed and restated, that the county court erred in concluding that Chrisp's revocable trust was not part of the augmented estate. Gail also assigns that the court erred in awarding her only $6,930 for attorney fees.

IV. STANDARD OF REVIEW
A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[2] Statutory interpretation is a question of law.[3] When reviewing questions of law in a probate matter, we reach a conclusion independent of the determination reached by the court below.[4] When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion.[5]

V. ANALYSIS

1. Appellate Jurisdiction
The trustees contend that this court does not have jurisdiction because Gail failed to timely appeal from the final order in the trust proceeding. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[6] An appellate court acquires no jurisdiction unless the appellant has satisfied the statutory requirements for appellate jurisdiction.[7]
During these proceedings, the county court, under the Nebraska Probate Code, did not have jurisdiction over trusts.[8] This jurisdictional change was part of the Legislature's enactment of the Nebraska Uniform Trust Code in 2003.[9] Thus, the court did not have jurisdiction in the probate proceeding to consider the petition of the personal representative, Birch, against the trust under § 30-3850(a)(3) of the trust code. But because Birch was unsure whether he could raise a claim under this provision in the probate proceeding, he also commenced a trust proceeding in the county court under § 30 3850. The court therefore had jurisdiction in the trust proceeding to consider the issues that Birch properly raised under that statute. Under § 30 3850, Birch asked the court to determine the trust's liability for statutory allowances, costs, expenses, and claims against the estate, purportedly including Gail's "claim" for an elective share. In both the trust proceeding and the probate proceeding, the county court ruled that the trust assets were not part of the augmented estate for determining Gail's elective share. Thus, if § 30 3850 governed the augmented estate issue, Gail should have appealed from the final order in the trust proceeding. As we conclude below, however, § 30 3850 does not apply in determining an augmented estate. Section 30 2314 of the Nebraska Probate Code governs how the augmented estate is determined. So Gail's failure to appeal from the final order in the trust proceeding does not deprive this court of jurisdiction over her appeal from the probate order. Having disposed of the jurisdictional issue, we proceed to the merits.

2. The Augmented Estate Does Not Include premarital Trusts
Under Neb. Rev. Stat. § 30-2313 (Reissue 1995), a surviving spouse has a right to a share of the "augmented estate" subject to conditions not at issue in this appeal. Section 30-2314 defines the augmented estate.[10] Under § 30-2314, the probate estate is augmented by first reducing the estate by specified obligations and liabilities and then increasing the estate by the value of specified properties and transfers.[11] Gail argues, however, that our reference to the "probate estate" in In re Estate of Myers[12] was dicta and inaccurate. She argues that the term "probate estate" does not appear in § 30 2314 and that the definition of "estate" in the Nebraska Probate Code includes more than a probate estate. Gail advances a creative but misguided argument.

(a) Section 30-2314(a) Excludes a Decedent's Premarital Transfers to a Revocable Trust
Section 30-2314(a), in relevant part, provides that
[t]he augmented estate is the estate, first, reduced by the aggregate amount of funeral and administration expenses, homestead allowance, family allowances and exemptions, and enforceable claims and, second, increased by the aggregate amount of the following items:
(1) The value of property transferred by the decedent at any time during marriage to the surviving spouse to or for the benefit of any person other than a bona fide purchaser or the surviving spouse, but only to the extent to which the decedent did not receive adequate and full consideration in money or money's worth for such transfer, if such transfer is a transfer of any of the following types:
. . . .
(ii) Any transfer to the extent to which the decedent retained at death a power alone or with any other person to revoke such transfer or to consume, invade, or dispose of the principal of the property for his or her own benefit.
Absent a statutory indication to the contrary, we give words in a statute their ordinary meaning.[13] Section 30-2314(a)(1) lists all of a decedent's transfers of property the value of which may be used to increase the probate estate for calculating an elective share. We agree that the transfer described in § 30-2314(a)(1)(ii) would include a transfer to a revocable trust. But subsection (a)(1) clearly states that the decedent's transfers must have occurred during the decedent's marriage to the surviving spouse. Additionally, the statutory comments to the original § 30 2314 specifically stated that transfers under subsection (a)(1) "are transfers by the decedent during his lifetime which are essentially will substitutes, arrangements which give him continued benefits or controls over the property. However, only transfers during the marriage are included in this category."[14]
Although in 1980 and 1985, the Legislature amended § 30-2314, it kept the requirement that the decedent's transfer of property must have occurred during the marriage to the surviving spouse.[15] Our conclusion that a decedent's premarital transfers to a trust are excluded from the augmented estate is not altered because § 30 2314 fails specifically to refer to the "probate estate."

(b) "Estate" in § 30-2314 Means "Probate Estate"
Nebraska adopted the original 1969 Uniform Probate Code (UPC) in 1974,[16] and Nebraska's § 30-2314 tracks the language of the original UPC § 2 202.[17] Like Nebraska's § 30-2314, the original UPC provision does not include in the augmented estate a decedent's premarital transfer of property to a revocable trust. Also like Nebraska's § 30-2314, the UPC provision states that "[t]he augmented estate means the estate reduced by" the same specified obligations and liabilities and increased by the same specified nonprobate assets.[18] But contrary to Gail's contention, the definition of "estate" under the Nebraska Probate Code includes only the decedent's property that is subject to administration under the codei.e., the "probate estate."[19] Thus, "the estate" under § 30 2314 means the "probate estate." The comments to Nebraska's original § 30-2314 and the UPC's original § 2-202 clarify that under § 30 2314, "the probate estate" is augmented to compute the surviving spouse's elective share.[20] We specifically cited this statutory comment in In re Estate of Myers,[21] although from a different compilation of Nebraska's statutes.

(c) Trust Code Protections Do Not Apply in Determining the Augmented Estate
We do not agree that excluding premarital transfers to trusts from the augmented estate is inconsistent with the protections afforded under § 30 3850 of the trust code. Gail argues that the purpose of § 30 3850 is to protect the statutory rights of the surviving spouse. She further argues that the right to an elective share falls within the statute's "statutory allowances" and "claims." We disagree.
Again, absent a statutory indication to the contrary, we give words in a statute their ordinary meaning.[22] We will not read into a statute a meaning that is not there.[23] And reading § 30 3850(a)(3), we see no mention of a surviving spouse's elective share. That subsection, in relevant part, provides that
the property of a trust that was revocable at the settlor's death is subject to claims of the settlor's creditors, costs of administration of the settlor's estate, the expenses of the settlor's funeral and disposal of remains, and statutory allowances to a surviving spouse and children to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses, and allowances.
Nor is an elective share a statutory allowance. The statutes granting statutory allowances explicitly state that these rights are in addition to any shares passing to a surviving spouse or dependent child through a will, intestate succession, or elective share.[24]
Gail, however, relies on the definition of "claim" under the probate code to argue that an elective share is a claim against the estate. Section 30-2209(4) of the probate code provides:
Claim, in respect to estate of decedents . . ., includes liabilities of the decedent . . . whether arising in contract, in tort or otherwise, and liabilities of the estate which arise at or after the death of the decedent . . ., includ ing funeral expenses and expenses of administration. The term does not include . . . demands or disputes regarding title of a decedent . . . to specific assets alleged to be included in the estate.

Gail's argument lacks merit. Her interpretation of a claim to include a petition for an elective share would render the augmented estate statute nonsensical.[25] As stated above, the augmented estate must be reduced by enforceable claims.[26] Thus, if a "claim" included a petition for an elective share, the augmented estate would have to be reduced by whatever amount the surviving spouse properly claimed for an elective share. When viewed in context with other relevant statutes, it is clear that the trust code's § 30-3850(a)(3) does not apply in determining whether a settlor's trust assets should be included in the augmented estate for calculating the elective share of the settlor's surviving spouse. A surviving spouse's elective share is neither a statutory allowance nor a claim against the estate. Thus, the elective share statutes and trust code protections under § 30 3850 are not inconsistent.

(d) Legislature Has Chosen Public Policy
Finally, Gail contends that excluding premarital trusts from the augmented estate would have a devastating effect on the elective share statutes. She argues that by transferring their property to a revocable trust before marrying, individuals can simply avoid the statutes meant to protect surviving spouses without the disclosure and consent that would be required for a prenuptial agreement. As we know, however, it is the Legislature's function through the enactment of statutes to declare what is the law and public policy of this state.[27] And the Legislature has declared its public policy choice by rejecting the revised article II of the UPC.
In 1990, article II of the UPC was significantly revised, including the elective share provisions.[28] Under the revised UPC article II, the augmented estate includes the value of the decedent's nonprobate transfer to others through a revocable trust, whether the trust was created before or during the marriage.[29] The Legislature, by adopting the original UPC and declining to adopt the revised article II of the UPC,[30] has made a clear policy choice in § 30-2314. It explicitly stated that policy choice in the statutory comments to Nebraska's original § 30 2314, which comments are largely identical to the UPC comments in the original § 2 202. Those comments provide that the exclusion of premarital trusts from the augmented estate was intended to permit a person "to provide for children by a prior marriage, as by a revocable living trust, without concern that such provisions will be upset by later marriage."[31]

3. Attorney Fees
Gail argues that the county court erred in failing to award her more than $6,930 for the attorney fees she incurred as personal representative.
In February 2006, Gail requested attorney fees, under Neb. Rev. Stat. § 30-2481 (Reissue 1995) of the probate code and Neb. Rev. Stat. § 30 3893 (Cum. Supp. 2004) of the trust code, for "prosecuting various estate proceedings." She sought $59,438.58 in attorney fees for the period between October 2004 and January 2006. The billing statement attached to her request included fees for work performed both before and after she was the appointed personal representative. The county court appointed Gail personal representative on March 14, 2005, and removed her on August 23. During this time, her attorneys billed her $19,636 for 142.1 hours of work. In June 2006, under the same statutes, she sought an additional $9,923.41 in attorney fees for the period from February through May 2006.
At the final hearing, Birch agreed that by the time he was appointed in August 2005, Gail and her attorneys had opened the estate, sent out notices, filed an inventory, and obtained funding from the trust for statutory allowances. Birch stated that he did not bill hourly for estate work, but he estimated that this work would normally require about 20 hours. Birch stated that he charged $120 an hour and opined that the hourly rate for attorneys locally ranged from $100 to $150, depending on the attorney's experience. Another attorney for Gail testified that he believed the fees her attorneys charged were reasonable. The court stated that its concern was not the hourly rate of Gail's attorneys but the cutoff period for awarding expenses under the probate code.
In its dual September 2006 orders, the court adopted the trustees' recommendation to award Gail $6,930 in attorney fees while she was the personal representative. This award represented attorney fees for over 46 hours at $150 per hour. The court noted that Gail's award for attorney fees would have been no more than $3,000 if it had calculated it based on Birch's testimony. The court did not specifically state that it was awarding Gail attorney fees under the probate code's § 30-2481. But because the court limited Gail's attorney fees to the time when Gail was personal representative, it clearly awarded them under that section.
Gail contends that it was her duty as personal representative to seek funds from the trust for statutory allowances, costs, expenses, and claims, and to administer these sums once she obtained them. Relying on § 30-2209(12), Gail argues that because the definition of "estate" in the probate code includes a trust, administration of an estate necessarily includes any trust property in which the decedent had an interest. Relying on Neb. Rev. Stat. §§ 30 2464 (Cum. Supp. 2006) and 30 2470 (Reissue 1995), she argues that her duties as Chrisp's personal representative included taking possession of Chrisp's property for settlement and distribution, including commencing an action to recover Chrisp's property in the trust. Thus, she argues that the attorney fees she incurred to have the trust assets included in the augmented estate were not personal to her as the surviving spouse, but were part of her expenses in performing her duties as personal representative.
We agree that under § 30-2470, a personal representative has a duty to take possession of the decedent's property if necessary for administration of the estate. And under § 30 2464(a), a personal representative has a duty to settle and distribute an estate "as expeditiously and efficiently as is consistent with the best interests of the estate." But we do not agree that because an "estate" under § 30 2209(12) can include a trust, a personal representative has a duty to take inventory of or recover assets from the decedent's nontestamentary trust.
We recognize that when the Legislature removed probate jurisdiction over trusts, it failed to amend the definition of "estate" to include trusts only in limited circumstances. But this provision must be read consistently with other provisions of the probate code and trust code. Under the trust code, a county court may authorize a settlor's guardian or conservator to exercise the settlor's powers over a trust with the approval of the court supervising the conservatorship or guardianship.[32] If, under the trust code, the county court so authorizes a conservator or guardian, then, under the probate code, the court supervises the guardian or conservator's exercise of power.[33]
Otherwise, a court in a probate proceeding could have jurisdiction over nontestamentary trust assets only in the unusual circumstance that they become probate assets. For example, this could occur when a settlor directs a trustee to pay over the undistributed principal and income of an inter vivos trust to the settlor's personal representative.[34] Also, when a testamentary trust is created by a valid will,[35] the court has jurisdiction over the probate assets until they are distributed to the trustee.[36]
But we cannot interpret the inclusion of trusts in the definition of an estate to authorize probate administration of nontestamentary trust assets without frustrating the purpose for creating the trusts. The Nebraska Probate Code specifically authorizes the creation of nontestamentary, nonprobate transfers on death, including transfers through trusts.[37] A nontestamentary trust is not subject to the procedures for the administration of a decedent's estate.[38] Avoiding the costs and delays of probate administration is a primary motivation for creating revocable trusts.[39]
Because Chrisp's inter vivos trust could not be revoked after his death, those assets were not a part of his estate. So, Gail incorrectly argues that she had a duty as personal representative to take an inventory of the trust assets or recover those assets for probate administration. The persons responsible and potentially liable for the trust's administration were the trustees, Lynn and Kentnot the estate's personal representative. Under § 30-3850 of the trust code, a personal representative has no interest in the decedent's validly created nontestamentary trust except to assert the trust's liability for the statute's specified claims against the estate and statutory allowances that the decedent's estate is inadequate to satisfy. As discussed above, those potential liabilities do not include a surviving spouse's elective share. And commencing a proceeding against the trust under § 30 3850 did not shift the responsibility from the trustees to the personal representative to administer the trust's assets.
Attorney fees and expenses may generally be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[40] Under § 30-2481 of the Nebraska Probate Code, attorney fees are awarded to the personal representative as part of the administration expenses.[41] There is no statute authorizing attorney fees for a surviving spouse.
Despite Gail's arguments, a surviving spouse's efforts to have the decedent's nonprobate trust assets included in the augmented estate are personal to the surviving spouse. Even if she had succeeded in having the court include Chrisp's non-probate transfer in the augmented estate, that decision would not have benefited the estate because the trust was not a probate asset. We conclude that a surviving spouse is not entitled to attorney fees for legal actions that she took while she was not the personal representative[42] and that were directed at obtaining assets that did not benefit the estate or come under its administration.[43]
Gail does not argue that the county court's award of attorney fees for her administrative duties while personal representative was unreasonable, and we find no abuse of discretion in the court's award.

VI. CONCLUSION
We conclude that Gail's failure to appeal from the final order in the trust proceeding commenced under § 30 3850 did not deprive this court of jurisdiction over her appeal from the final probate order. Section 30 3850 of the trust code does not apply in determining whether a decedent's inter vivos transfers may be included in the augmented estate for calculating a surviving spouse's elective share. Section 30-2314 of the probate code governs this issue. Under § 30 2314, we conclude that the augmented estate does not include the decedent's premarital transfers to a revocable trust. Finally, we conclude that a surviving spouse is not entitled to attorney fees for legal actions that were taken while not acting as the personal representative and that were directed at obtaining assets that did not benefit the estate or come under its administration.
Affirmed.
NOTES
[1] See Neb. Rev. Stat. § 30-3850(a)(5) (Cum. Supp. 2006).
[2] Ahmann v. Correctional Ctr. Lincoln, 276 Neb. 590, 755 N.W.2d 608 (2008).
[3] Borrenpohl v. DaBeers Properties, 276 Neb. 426, 755 N.W.2d 39 (2008).
[4] See In re Estate of Cooper, 275 Neb. 322, 746 N.W.2d 663 (2008).
[5] See In re Trust of Rosenberg, 273 Neb. 59, 727 N.W.2d 430 (2007).
[6] Poppert v. Dicke, 275 Neb. 562, 747 N.W.2d 629 (2008).
[7] See Goodman v. City of Omaha, 274 Neb. 539, 742 N.W.2d 26 (2007).
[8] See, Neb. Rev. Stat. § 30-2211 (Cum. Supp. 2006); Neb. Rev. Stat. §§ 30-2801 to 30-2826 (Cum. Supp. 2006) (noting repeal or transfer of all sections under article 28); Neb. Rev. Stat. § 30 38,110 (Cum. Supp. 2006).
[9] See 2003 Neb. Laws, L.B. 130.
[10] See In re Estate of Myers, 256 Neb. 817, 594 N.W.2d 563 (1999).
[11] See, id.; In re Estate of Carman, 213 Neb. 98, 327 N.W.2d 611 (1982), abrogated on other grounds, In re Estate of Disney, 250 Neb. 703, 550 N.W.2d 919 (1996).
[12] See In re Estate of Myers, supra note 10.
[13] See McClellan v. Board of Equal. of Douglas Cty., 275 Neb. 581, 748 N.W.2d 66 (2008).
[14] See § 30 2314 (Reissue 1975) (statutory comment). Accord Unif. Probate Code, prior art. II, § 2 202, comment, 8 (part I) U.L.A. at 299 (1998).
[15] See, 1985 Neb. Laws, L.B. 293; 1980 Neb. Laws, L.B. 694.
[16] See, 1974 Laws, L.B. 354; Unif. Probate Code, supra note 14, table of jurisdictions adopting UPC, 8 (part I) U.L.A. at 1.
[17] See, § 30-2314 (Reissue 1975) (source of law); Unif. Probate Code, supra note 14, § 2-202, 8 (part I) U.L.A. at 297.
[18] See Unif. Probate Code, supra note 14, 8 (part I) U.L.A. at 297.
[19] See Neb. Rev. Stat. § 30-2209(12) (Cum. Supp. 2006).
[20] See, § 30-2314 (Reissue 1975) (statutory comment); Unif. Probate Code, supra note 14, comment, 8 (part I) U.L.A. at 299. See, also, Restatement (Third) of Property § 9.1, comment e. and Reporter's Note comment 3 (2003).
[21] In re Estate of Myers, supra note 10.
[22] McClellan v. Board of Equal. of Douglas Cty., supra note 13.
[23] See Ottaco Acceptance, Inc. v. Larkin, 273 Neb. 765, 733 N.W.2d 539 (2007).
[24] See Neb. Rev. Stat. §§ 30-2322 to 30-2324 (Reissue 1995 & Cum. Supp. 2006).
[25] See In re Estate of Cooper, supra note 4.
[26] See § 30 2314(a) (Reissue 1995).
[27] Hogelin v. City of Columbus, 274 Neb. 453, 741 N.W.2d 617 (2007).
[28] See Unif. Probate Code, supra note 14, rev. art. II, prefatory note, 8 (part I) U.L.A. at 75.
[29] See Unif. Probate Code, supra note 14, rev. art. II, § 2 205 and comment, 8 (part I) U.L.A. 105, 107 08.
[30] See Unif. Probate Code, supra note 14, table of jurisdictions adopting UPC, 8 (part I) U.L.A. at 1, and adoption of rev. art. II, 8 (part I) U.L.A. at 76.
[31] § 30 2314 (Reissue 1975) (statutory comment). See Unif. Probate Code, supra note 14, § 2-202, comment, 8 (part I) U.L.A. at 299.
[32] See Neb. Rev. Stat. § 30 3854(f) (Cum. Supp. 2006).
[33] See Neb. Rev. Stat. § 30 2628(4)(iii) (Cum. Supp. 2006).
[34] See Rearden v. Riggs Nat. Bank, 677 A.2d 1032 (D.C. App. 1996).
[35] See Restatement (Third) of Trusts § 17 (2003).
[36] See id., comment a. and § 19. See, also, George Gleason Bogert and George Taylor Bogert, The Law of Trusts and Trustees § 583 at 357 (rev. 2d ed. 1980) ("Taking Over From Executor").
[37] See, In re Estate of Rosso, 270 Neb. 323, 701 N.W.2d 355 (2005); Neb. Rev. Stat. § 30-2715 (Reissue 1995).
[38] See Restatement, supra note 35, § 25(2).
[39] See id., § 17, comment a.
[40] See Eicher v. Mid America Fin. Invest. Corp., 270 Neb. 370, 702 N.W.2d 792 (2005).
[41] See In re Estate of Reimer, 229 Neb. 406, 427 N.W.2d 293 (1988).
[42] See In re Estate of Wagner, 222 Neb. 699, 386 N.W.2d 448 (1986).
[43] See, e.g., Dowling v. Rowan, 270 Va. 510, 621 S.E.2d 397 (2005); Tillman v. Smith, 526 So. 2d 730 (Fla. App. 1988).