Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/12/2023 09:08 AM CDT

In re Estate of Calvin J. Chess, deceased.
Christine Spanyers, as Personal Representative
of the Estate of Calvin J. Chess, appellee,
v. Richard Chess, appellant, and
Matthew Pokorny, appellee.

___ N.W.2d ___

Filed August 29, 2023.    No. A-22-782.

1. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
2. **Decedents' Estates: Judgments: Appeal and Error.** Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Decedents' Estates: Appeal and Error.** When reviewing a decision of the probate court, the appellate court does not reweigh the evidence and must consider the evidence in the light most favorable to the successful party, who is entitled to every reasonable inference available from the evidence.
4. **Decedents' Estates: Attorney Fees.** Ordinarily, the fixing of reasonable compensation, fees, and expenses, pursuant to Neb. Rev. Stat. § 30-2480 (Reissue 2016), governing compensation of personal representatives; Neb. Rev. Stat. § 30-2481 (Reissue 2016), governing expenses in estate litigation; and Neb. Rev. Stat. § 30-2482 (Reissue 2016), governing compensation of personal representatives and employees of the estate, is within the sound discretion of the county court.
5. **Attorney Fees: Appeal and Error.** When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion.

6. **Jurisdiction: Appeal and Error.** It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

7. **Final Orders: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 25-1902(1)(b) (Cum. Supp. 2022), an order affecting a substantial right made during a special proceeding is a final order which may be vacated, modified, or reversed.

8. **Decedents' Estates: Final Orders: Appeal and Error.** A proceeding under Neb. Rev. Stat. § 30-2454 (Reissue 2016) to remove a personal representative for cause is a special proceeding within the meaning of Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022) and therefore can result in a final, appealable order even though it may not terminate the action or constitute a final disposition of the case.

9. **Final Orders: Appeal and Error.** A substantial right is involved if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

10. **Decedents' Estates: Final Orders: Appeal and Error.** An order that terminates the appointment of a personal representative and appoints a successor personal representative is a final, appealable order when such order was entered in a special proceeding and affected a substantial right of the estate and its beneficiaries.

11. **Decedents' Estates: Executors and Administrators: Damages: Proof.** A beneficiary or designee seeking a surcharge against the personal representative for conversion, damage, or loss of estate property has the burden of proving (1) a fiduciary duty was breached, (2) the breach of the fiduciary duty caused the losses alleged, and (3) the extent of those damages.

12. **Decedents' Estates: Executors and Administrators.** A personal representative is a fiduciary who must comply with the prudent investor rule set forth at Neb. Rev. Stat. §§ 30-3883 through 30-3889 (Reissue 2016). The prudent investor rule provides, among other things, that a trustee (or personal representative) shall invest and manage trust assets as a prudent investor would, taking into account the purposes, terms, distribution requirements, and other circumstances of the trust (or estate).

13. **Attorney Fees.** Attorney fees and expenses may generally be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

14. **Decedents' Estates: Attorney Fees.** Under Neb. Rev. Stat. § 30-2481 (Reissue 2016), attorney fees are awarded to the personal representative as part of the administrative expenses for the estate.

15. ____: ____. No allowance is authorized to be made out of an estate for the services of an attorney not employed by the personal representative. Such an allowance is permitted, however, when the services provided were in the interest of all persons interested in the estate and were beneficial to the estate.

Appeal from the County Court for Douglas County: DARRYL R. LOWE, Judge. Affirmed in part, dismissed in part, and in part remanded with directions.

Thomas E. Whitmore, of Whitmore Law Office, L.L.C., for appellant.

Julie M. Ryan and Nicole Seckman Jilek, of Abrahams, Kaslow & Cassman, L.L.P., for appellee Christine Spanyers.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Richard Chess appeals from two separate orders entered by the Douglas County Court that pertained to the administration of the estate of Calvin J. Chess, who was Richard's father. In the first order, the county court removed Richard as personal representative of the estate and appointed Christine Spanyers (Christine), Richard's half sister, as the successor personal representative. In the second order, the county court imposed a surcharge against Richard in the amount of $84,224, to be split equally between Christine and the third beneficiary of the estate. The county court also awarded Christine attorney fees and costs in connection with her filing of the petition to remove Richard as personal representative. The court denied Richard's request for attorney fees incurred during his time as personal representative of the estate.

Upon our review, we conclude that we do not have jurisdiction to review the county court's decision to remove Richard as personal representative of the estate. The court's order effectuating such removal was final and appealable,

but Richard did not appeal from the order within 30 days. We affirm, in part, the county court's decision to impose a surcharge on Richard. The amount of the surcharge should be based on Richard's failure to collect fair market rent from tenants who occupied real estate owned by the estate and for his utilizing estate funds to pay unreasonable expenses. However, the surcharge should not be based on Richard's actions regarding the stock owned by the estate. We remand the cause to the county court because we cannot discern how the county court determined the amount of surcharge to impose for the uncollected rent. The county court is directed to delineate separately the amount of the surcharge to be imposed for the uncollected rent and payment of unreasonable expenses. We affirm the court's award of attorney fees to Christine from Richard's portion of the estate proceeds, which attorney fees were incurred in connection with the litigation herein and the court's denial of Richard's request for attorney fees.

## II. BACKGROUND

Calvin died intestate in October 2018. In January 2019, Richard was appointed as personal representative of Calvin's estate. It was determined that Calvin had four heirs at the time of his death: Richard; Christine; Calvin's other son, Michael Chess; and Matthew Pokorny (Matthew), the son of Calvin's deceased daughter. A few months after Calvin's death, Michael died. Pursuant to Michael's will, Richard was to inherit his entire estate. As such, Calvin's estate was to be divided as follows: 50 percent to Richard, 25 percent to Christine, and 25 percent to Matthew.

In September 2020, almost 2 years after Calvin's death, Christine filed a petition seeking the removal of Richard as personal representative of Calvin's estate, the appointment of a successor personal representative, an accounting, a surcharge against Richard, and attorney fees. In the petition, Christine alleged that Richard had failed to timely file an accurate inventory for the estate, had failed to timely pay inheritance

taxes, had failed to sell real property that was a part of the estate, had failed to keep her informed regarding the administration of the estate, and had failed to preserve all of the assets held by the estate.

On July 13, 2021, the county court held a hearing solely on the issues of whether Richard should be removed as personal representative and whether a successor personal representative should be appointed. At this hearing, Christine testified to her concerns regarding Richard's administration of the estate. Richard testified and offered other evidence to demonstrate his good faith efforts to close the estate.

On March 16, 2022, the county court entered an order removing Richard as personal representative of the estate. In the order, the court found merit to many of Christine's concerns with Richard's administration of the estate since his appointment in January 2019. First, the county court found that Richard had "failed to file an Inventory within 90 days [after his appointment], which in the Letters [of Personal Representative], he was required to do." Instead, Richard submitted an initial inventory to the county court on June 27, 2019, more than 5 months after his appointment as personal representative. He did not file a corrected, amended inventory until 15 months later, in September 2020. And, by the time of the hearing in July 2021, Richard testified that he was still working on a second amended inventory.

In its order, the county court also found that Richard had failed to file all closing documents for the estate within a year of his appointment. According to the county court, much of the delay in filing was caused by Richard's mishandling of the sale of two real properties owned by the estate, including his failure to collect fair market rent from the tenants who resided at the properties prior to their sale and by expending estate funds to repair the properties when they were both sold "'as is.'" The county court also found that Richard had failed to timely file an inheritance tax worksheet, which failure subjected the estate to interest and penalties, and failed to

reasonably communicate with Christine as an heir to the estate. Based on all of these factors, the court ordered the removal of Richard as the personal representative of the estate. The court specifically declined to find that Richard's failure to diversify the estate's stock portfolio was a basis for removal. The court appointed Christine as the successor personal representative.

On July 21, 2022, the county court held another hearing. This hearing focused on whether Richard owed a surcharge to the other beneficiaries for his mishandling of the estate and whether attorney fees should be awarded either to Christine or to Richard. At this hearing, Christine presented evidence to demonstrate the amount of funds that Richard owed to the estate. She argued that Richard owed money for his failure to collect fair market rent on the two real properties owned by the estate, his failure to diversify stock owned by the estate prior to its decrease in value, and his expenditure of estate funds for unreasonable expenses.

Christine contended that a fair market rent for each of the two real properties owned by the estate was $700 per month. The same tenants who resided in the two homes at the time of Calvin's death on October 30, 2018, resided in them through sometime in November 2020, the month that Richard, acting as personal representative, closed on the sale of those houses. Thus, Christine contended that in the time between October 30, 2018, and November 2020, the estate was owed rent for each property in the amount of $17,381.10, for a total of $34,762.20. Richard's receipts indicated that he had collected only $6,500 in rent from one of the properties. He agreed that $700 per month was fair market value for rent on that house. He collected $0 in rent for the other property, even though he testified that $400 per month would be fair market value. Richard explained that the tenant who paid no rent made repairs to the two homes in exchange for living rent free. Christine did not believe that the tenant was actually completing any valuable work. As such, she argued that Richard owed a surcharge of $28,262.20 ($34,762.20 - $6,500), for

his failure to collect rent owed to the estate for the period beginning the day after Calvin's date of death. She conceded that a lesser amount would be due if the date of Richard's appointment as personal representative was utilized as the inception point.

Christine also asserted that Richard had dissipated the assets of the estate by failing to diversify stock that had been owned by Calvin and that was a part of the estate. At the time of his death, Calvin owned 11,200 shares in Century Link stock. On October 30, 2018, those shares were valued at $20.46 per share, or a total of $229,152. On February 14, 2019, Christine alerted Richard by email that the stock was then valued at $12.78 per share. Christine asked Richard to address the diminished value. She argues that had Richard sold the stock and invested the funds in an "S&P 500" index mutual fund, the value of the asset would have increased since Calvin's death, rather than decreased. Christine did admit, on cross-examination at the July 13, 2021, hearing, that Richard was unable to manage the stocks until he was appointed as the personal representative in January 2019. By the time of his appointment, the stock had already depreciated in value by approximately $5 per share. After January 2019, the stock fluctuated in value and paid some dividends. Evidence adduced at the hearing indicated that as of the date Richard was removed as personal representative (March 16, 2022), the stock was valued at $10.80 per share. Ultimately, Christine contended that but for Richard's failure to manage the stock, the "value of Century Link stock should have increased to at least $371,226.24." Christine did not provide expert testimony to support her calculation. However, in her affidavit, she arrives at this number by utilizing the value of the stock on the date of Calvin's death, then computing the dollar figure that amount would have grown to had the money been invested that day in an S&P 500 index fund. She asked that Richard be ordered to pay the other heirs a surcharge based on the difference between the stock's value on the date of death

and what its value would have been on the date Richard was removed as personal representative.

Christine further argued that Richard should be ordered to pay a surcharge based on certain expenditures he made using estate funds. Christine asserted that certain expenditures were unreasonable, including the monthly rental payments for the use of storage units and the purchase of building materials that were, according to Richard, used to make repairs to the two real properties owned by the estate. Christine calculated that $23,128.89 in purchases from the estate's account were unreasonable and that Richard should be ordered to pay a surcharge to the other beneficiaries.

In total, Christine asked the county court to impose a surcharge on Richard in the amount of $96,732.68, with one-half of the surcharge paid to Christine and one-half paid to the other heir, Matthew.

Christine also asked the county court to award her attorney fees in the amount of $47,924.48. Richard also asked for an award of attorney fees for costs associated with his time as personal representative. He requested fees in the amount of $14,527.50.

On September 23, 2022, the county court entered an order addressing Christine's request for a surcharge and both parties' requests for attorney fees. The court first determined that Richard owed a surcharge to the other beneficiaries as a result of his actions while personal representative. The court found:

> Richard as personal representative . . . had a duty to charge the tenants [residing in the properties owned by the estate] fair market rent for the entire duration of their tenancies to fulfill the requirements of Neb. Rev. Stat. § 30-2470 [(Reissue 2016)] and the best interests of the Estate.

The court indicated that Richard owed a surcharge as a result of his failure to collect all of the rent owed to the estate. The court also found that Richard did not act prudently in

his handling of the Century Link stock owned by the estate. Specifically, the court found:

> Richard's handling of the stock was not one of the grounds for his removal as Personal Representative of the Estate. But the evidence is undisputed that the stock decreased by about half the fair market value it held on the date of the death of the Decedent. In the about one year and eight months that pre-dated Christine filing her Petition on September 1, 2020, in which Richard was Personal Representative of the Estate, Richard never changed his investment strategy. Nor did he change his strategy for the remaining about one year and six months until his ordered removal in March 2022.

The court also agreed with Christine that Richard had made unreasonable expenditures using the estate's bank account in the amount of $23,128.29. Ultimately, the court ordered Richard to pay a total surcharge in the amount of $84,224, with $42,112 to be paid to Christine and $42,112 to be paid to Matthew. The $84,224 in surcharge Richard was ordered to pay was $12,508.68 less than Christine asked to be awarded. Other than the amount specified for unreasonable expenditures, the court did not provide any specific calculations in its order that delineate how it arrived at the amount of the surcharge it ordered Richard to pay.

Also in its September 2022 order, the court ordered Richard to pay attorney fees to Christine in the amount of $42,888. The court found that Christine's actions in filing the petition for removal of Richard as personal representative benefited the estate. It also found that Christine had made significant efforts toward closing the estate since being appointed as successor representative. The court denied Richard's request for attorney fees: "Richard is not entitled to payment of his attorney's fees and costs out of the Estate to any extent."

Richard appeals here, challenging both the county court's order removing him as personal representative and the order requiring him to pay a surcharge and attorney fees.

## III. ASSIGNMENTS OF ERROR

Richard assigns, renumbered and consolidated, that the county court erred in removing him as personal representative of the estate, in ordering Richard to pay a surcharge to the other beneficiaries of the estate, in awarding Christine attorney fees incurred in connection with the filing of the petition to remove him as personal representative of the estate, and in denying his request for attorney fees.

## IV. STANDARD OF REVIEW

[1] A jurisdictional issue that does not involve a factual dispute presents a question of law. *In re Estate of Abbott-Ochsner*, 299 Neb. 596, 910 N.W.2d 504 (2018).

[2,3] Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. When reviewing a decision of the probate court, the appellate court does not reweigh the evidence and must consider the evidence in the light most favorable to the successful party, who is entitled to every reasonable inference available from the evidence. *Id*.

[4,5] Ordinarily, the fixing of reasonable compensation, fees, and expenses, pursuant to Neb. Rev. Stat. § 30-2480 (Reissue 2016), governing compensation of personal representatives; Neb. Rev. Stat. § 30-2481 (Reissue 2016), governing expenses in estate litigation; and Neb. Rev. Stat. § 30-2482 (Reissue 2016), governing compensation of personal representatives and employees of the estate, is within the sound discretion of the county court. *In re Estate of Graham, supra*. When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion. *Id*.

## V. ANALYSIS

### 1. Removal of Richard as Personal Representative

On March 16, 2022, the county court entered an order terminating Richard's appointment as personal representative of the estate and appointing Christine as the successor personal representative. In this appeal, Richard purports to challenge the county court's decision to terminate his appointment as personal representative. However, Richard's notice of appeal was filed on October 21, more than 30 days after the county court filed its March 16 order. As such, if the March 16 order terminating Richard's appointment as personal representative of the estate was a final, appealable order, Richard's appeal of this issue is not timely and we lack jurisdiction to consider the substance of his arguments in this regard. See *Tilson v. Tilson*, 299 Neb. 64, 907 N.W.2d 31 (2018) (to vest appellate court with jurisdiction, notice of appeal must be filed within 30 days of entry of final order).

[6] It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *In re Estate of Lakin*, 310 Neb. 271, 965 N.W.2d 365 (2021), *modified on denial of rehearing* 310 Neb. 389, 966 N.W.2d 268. Appellate review under the Nebraska Probate Code is governed by Neb. Rev. Stat. § 30-1601 (Cum. Supp. 2022), which states that appeals from a county court may be taken in the same manner as appeals from a district court and that "[a]n appeal may be taken by any party and may also be taken by any person against whom the final judgment or final order may be made or who may be affected thereby." In this case, we must determine whether the March 16, 2022, order terminating Richard's appointment as personal representative of the estate constituted a final, appealable order.

[7-9] Pursuant to Neb. Rev. Stat. § 25-1902(1)(b) (Cum. Supp. 2022), an order affecting a substantial right made during a special proceeding is a final order which may

be vacated, modified, or reversed. The Nebraska Supreme Court has previously determined that a proceeding under the Nebraska Probate Code is a special proceeding. *In re Estate of Lakin, supra*. More specifically, the Supreme Court has acknowledged that a proceeding under Neb. Rev. Stat. § 30-2454 (Reissue 2016) to remove a personal representative for cause is a special proceeding within the meaning of § 25-1902 and therefore can result in a final, appealable order even though it may not terminate the action or constitute a final disposition of the case. *In re Estate of Lakin, supra*. Further, a substantial right is involved if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken. *Id*. We determine that the March 16, 2022, order finally disposed of Christine's petition to remove Richard as personal representative and, therefore, affected a substantial right of Richard and of the estate. This right cannot be effectively vindicated in an appeal from another final judgment in the case.

The Supreme Court has previously held that an order denying a motion to remove a personal representative for cause under § 30-2454 was a final, appealable order because it affected the substantial rights of the parties who petitioned for such removal. *In re Estate of Snover*, 233 Neb. 198, 443 N.W.2d 894 (1989). In *In re Estate of Snover*, the Supreme Court indicated that given the broad scope of the personal representative's power over the interests of the beneficiaries and other interested parties in an estate, the right conferred by § 30-2454 to petition the county court to remove the personal representative for cause is a substantial right. The court then held that an order denying the removal of the personal representative affected the substantial rights of those requesting the removal and was, thus, final and appealable. See, also, *In re Estate of Abbott-Ochsner*, 299 Neb. 596, 910 N.W.2d 504 (2018) (orders denying request to remove personal representative for cause are final and immediately appealable

by person interested in estate who petitioned for personal representative's removal); *In re Estate of Nemetz*, 273 Neb. 918, 735 N.W.2d 363 (2007) (county court's order denying children's request to remove personal representative is final order and is appealable, even though it neither terminated action nor constituted final disposition of case).

The Supreme Court has not yet explicitly addressed whether an order granting a motion to terminate the appointment of a personal representative is a final, appealable order. However, the Supreme Court has cited with approval to the proposition adopted by other jurisdictions that an order appointing or removing a personal representative is final and appealable. See *In re Estate of Abbott-Ochsner, supra*. The Supreme Court has also implicitly indicated that an order granting a motion to terminate the appointment of a personal representative is a final, appealable order in *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018). Therein, the court noted that the personal representative had not appealed from the county court's order removing him as personal representative within 30 days. Such comment implies that the order removing the personal representative was final and appealable. Moreover, in *In re Estate of Webb*, 20 Neb. App. 12, 817 N.W.2d 304 (2012), this court affirmed an order of the county court removing a personal representative and appointing a successor personal representative without addressing whether such order was a final, appealable order.

[10] We conclude that the March 16, 2022, order entered by the county court that terminated Richard's appointment as personal representative of the estate was a final, appealable order. Such order was entered in a special proceeding and affected a substantial right of the estate and its beneficiaries, including Richard. The March 16 order also terminated a distinct portion of the estate proceedings by removing Richard as personal representative and appointing Christine as the successor personal representative. See *In re Estate of Severson*, 310 Neb. 982, 970 N.W.2d 94 (2022). Because Richard did not

appeal from the March 16 order within 30 days, his appeal of this order is not timely and we lack jurisdiction to consider the merits of his substantive argument. We dismiss that portion of his appeal which challenges the March 16 order.

## 2. Surcharge Imposed Against Richard

Richard next appeals from the county court's September 23, 2022, order that directed him to pay a surcharge to Christine and Matthew and to pay a portion of Christine's attorney fees. Richard first contends that the county court erred in ordering him to pay a surcharge in the total amount of $84,224. Essentially, Richard argues that he exercised reasonable judgment in his administration of the estate and that he should not be required to reimburse the estate based on any of his decisions as personal representative. Upon our review of the record, we affirm the county court's decision that Richard should pay a surcharge to the estate in part. We find that the county court's findings regarding improper expenditures of estate funds and failure to collect rent are supported by the record. However, we find that Christine has failed to present sufficient evidence to justify a surcharge based on Richard's management of the estate's stock. Since the county court's order does not delineate what portion of the surcharge it imposed relates to uncollected rent and/or management of the stock, we remand the cause back to the county court for a calculation of the portion of the surcharge that relates to uncollected rent. That calculation may then be combined with the amount previously determined to be due based on improper expenditures to reach a total figure for the surcharge.

[11] If a personal representative's exercise of power concerning the estate is improper, he or she is liable to interested persons for "damage or loss resulting from breach of his [or her] fiduciary duty to the same extent as a trustee of an express trust." Neb. Rev. Stat. § 30-2473 (Reissue 2016). See, also, *Line v. Rouse*, 241 Neb. 779, 491 N.W.2d 316 (1992)

(stating action to surcharge personal representative may be brought to recover losses to estate for alleged breach of fiduciary duty by personal representative). The Supreme Court has recently held that a beneficiary or designee seeking a surcharge against the personal representative for conversion, damage, or loss of estate property has the burden of proving (1) a fiduciary duty was breached, (2) the breach of the fiduciary duty caused the losses alleged, and (3) the extent of those damages. *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018).

In the county court's September 2022 order, it found that Richard breached his fiduciary duty as personal representative by failing to collect fair market rent from the tenants who occupied real estate owned by the estate; by failing to take any action with regard to the Century Link stock, despite its decrease in value during his tenure as personal representative; and by utilizing estate funds to pay unreasonable expenses. Upon our review of the record, we find that the county court's findings regarding Richard's breach of fiduciary duties as to uncollected rent and payment of unreasonable expenses to be supported by the evidence presented at the hearings held below. There was evidence that Richard did not collect fair market rent from the tenants residing in the properties owned by the estate. Richard attempted to collect some amount of rent from the tenants living in one property, but failed to collect any rent from the tenant living in the other property. Instead, Richard claimed that this tenant was repairing the properties in lieu of paying rent. The record does not demonstrate that much, if any, of this work was actually completed or that it actually improved the value of the properties in any significant way. Richard was notified by Christine on multiple occasions regarding his obligation to collect fair market rent for the benefit of the estate.

Christine also offered detailed records of the estate's bank accounts to support her assertion that Richard used estate funds to make unreasonable expenditures. Examples of

unreasonable expenditures included building and material costs that did not improve the value of the houses or make them more marketable, storage unit rental costs that were taken out in Richard's name in his individual capacity and benefited only Richard, and code violation fees. The county court specifically found that Richard unreasonably expended $23,128.89 in violation of his fiduciary duty to the estate. We agree that the evidence was sufficient to justify the imposition of this surcharge.

The evidence regarding the management of the Century Link stock is not nearly so clear. Under Christine's calculation, Richard should be held to a standard in which he would have to produce a gain that equals selling the stock on the date of Calvin's death and investing the value that existed at that time in an S&P 500 index fund. According to her evidence, such a strategy would have resulted in a gain to the estate of $142,074 as of the date Richard was removed as personal representative.

[12] We first pause to note that a personal representative is a fiduciary who must comply with the prudent investor rule set forth at Neb. Rev. Stat. §§ 30-3883 through 30-3889 (Reissue 2016). See Neb. Rev. Stat. § 30-2464 (Reissue 2016). The prudent investor rule provides, among other things, that a trustee (or personal representative) shall invest and manage trust assets as a prudent investor would, taking into account the purposes, terms, distribution requirements, and other circumstances of the trust (or estate). Section 30-3885 requires a trustee to diversify the investments of the trust unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying. Christine argues that this provision required Richard to sell the Century Link stock in favor of a more diverse portfolio. While it may have been reasonable to sell this stock, we cannot say that the failure to sell the stock violated any requirement of diversification. According to the inventory filed by Christine, the Century Link stock

comprised less than 50 percent of the value of the estate at the time of Calvin's death. Other assets included real estate, checking and savings accounts, cash, bonds, a treasury warrant, coins, a vehicle, and other personal property. Viewed in total, the estate as a whole consisted of diverse assets.

We next focus on whether Richard's decision not to sell the Century Link stock in and of itself constituted a breach of his fiduciary duty. In performing this analysis, we first focus on what the value of the stock was at various key moments in time. The evidence demonstrates that on the date of Calvin's death, the stock was valued at $20.46 per share. Calvin died intestate, and there is no indication in our record that anyone other than Richard made application to serve as personal representative. Richard was appointed on January 16, 2019. On that date, the stock was valued at $15.34 per share. There is no evidence that Richard had any ability to manage or sell the stock prior to that date. On February 14, Christine informed Richard of her concern that the stock was losing value. On that date, she sent him an email stating that the value of the stock as of that date had dropped to $12.78 after being "over $20 a share" at the time of Calvin's death. While she expressed concern that the value of the stock would continue to decrease, she did not demand that the stock be sold, only that Richard look into the situation as it was his obligation to maintain the assets of the estate.

There was no evidence adduced at trial that Richard was skilled or particularly astute or sophisticated in the area of investment strategies. Given the evidence adduced, it was impossible for him to have acted before January 16, 2019. Some latitude must be given for a personal representative to become familiar with the assets in the estate and to develop a plan on how best to manage them, particularly with respect to the vicissitudes of the stock market. Given these factors, we find that it is more appropriate to examine whether Richard violated his fiduciary duty with respect to the management of the stock from a point following his opportunity to become

familiar with the assets he managed. On February 14, 2019, the total value of the stock at $12.78 per share was $143,136. On March 16, 2022, the date of his removal, the value of the stock was $10.82 per share, which computes to a total value of $121,184. This computation excludes dividends, however. In his affidavit received at the July 2022 hearing on the motion for surcharge, Richard testified that a 25-cent dividend was given per share on a quarterly basis. While our record does not have a complete statement of dividends awarded during the period Richard served as personal representative, a statement appended to Christine's affidavit does show the payment of dividends during the period reflected and does not refute Richard's claim that the dividends were awarded quarterly. Richard claims that a total of $39,200 in dividends was paid during the time period he was personal representative. Our computation would put that figure at $36,400. Adding that amount to $121,184 would put the total value of the stock plus dividends at $157,584. Therefore, under our calculation, the value of the stock (including dividends paid) would have increased the value of this investment by $14,448 between the date Christine alerted Richard to the issue and the date he was removed. While this is not a particularly high rate of return, no investment in the stock market (including an S&P 500 index fund) can guarantee any particular return on the investment. Given these circumstances and the lack of any expert testimony supporting Christine's position, we cannot say that Richard breached his fiduciary duty to the estate and its beneficiaries in his decisionmaking with regard to the Century Link stock. We find that Christine failed to produce competent evidence supporting her position that Richard should be surcharged based on his failure to sell the Century Link stock. Therefore, we must find that the county court's decision imposing a surcharge on this basis is without sufficient evidentiary support.

Given the foregoing findings, we agree with the county court that a surcharge should be paid by Richard. We find,

however, that the surcharge should be based only on Richard's payment of unjustified expenditures and failure to collect rent. The county court ordered Richard to pay a total of $84,224 to the two other beneficiaries, without explaining the precise rationale for how it arrived at its determination. The court did indicate that it adopted Christine's calculation of the amount of unreasonable expenses paid for with estate funds, that being $23,128.89. But the court did not indicate the amount of surcharge that was specifically attributable to Richard's failure to collect rent, as opposed to the mismanagement of the Century Link stock. Without knowing the amount of surcharge connected to the failure to collect rent, we cannot review whether the county court's award of a surcharge with respect to that issue was supported by the evidence. As such, we remand this cause back to the county court for an explanation of how it arrived at its decision to order Richard to pay a surcharge for uncollected rent and the amount of uncollected rent he should be surcharged for. That amount should be added to the $23,128.89 surcharged for the unjustified expenses paid so as to determine a total amount of surcharge to be ordered.

### 3. Attorney Fees

#### (a) Award of Attorney Fees to Christine

Richard also challenges the county court's decision to award attorney fees to Christine in the amount of $42,888. Richard alleges that there was no basis to support an award of attorney fees. Upon our review, we affirm the decision of the county court awarding Christine attorney fees to be paid from Richard's share of the estate.

[13-15] Attorney fees and expenses may generally be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *In re Estate of Chrisp*, 276 Neb. 966, 759 N.W.2d 87 (2009). Under

§ 30-2481, attorney fees are awarded to the personal representative as part of the administrative expenses for the estate. See *In re Estate of Chrisp, supra*. It has long been the rule in Nebraska that no allowance is authorized to be made out of an estate for the services of an attorney not employed by the personal representative. See *In re Estate of Love*, 136 Neb. 458, 286 N.W. 381 (1939). Such an allowance is permitted, however, when the services provided were in the interest of all persons interested in the estate and were beneficial to the estate. *Id*.

The county court found that an award of attorney fees to Christine was warranted based upon her actions in bringing her petition to remove Richard as personal representative, in collecting evidence to support the imposition of a surcharge against Richard, and in acting as successor personal representative. The court found that each of these actions benefited the estate as a whole:

> Christine's actions through her counsel provided benefit to the entire Estate by, among other things, pushing and encouraging the real estate transactions to close; continuously seeking the collection of fair market value of rent or at the very least a fair rent; collecting, verifying, and properly accounting for all assets of the Estate per her filing of the Amended Inventory on July 19, 2022 . . . ; and seeking a surcharge for Richard's various breaches of fiduciary duties . . . . Since becoming Successor Personal Representative, Christine has pursued her request for surcharge not only on her behalf, but also on behalf of the other innocent beneficiary, Matthew. Further, the Estate had a value of $477,709.39 . . . on the date of [Calvin's] death, Christine sought $96,732.68 in total surcharges against Richard, and this Court decided to order a surcharge in the total amount of **$84,224.00** against Richard. For the most part, Christine has prevailed on her claims set forth under her Petition and in the litigation of the above captioned matter.

We can find no abuse of discretion in the findings of the county court. First we note that a portion of the attorney fees sought were incurred pursuant to her duties as the successor personal representative. Beyond those fees, we agree with the county court that Christine's actions in initiating these proceedings served to benefit the estate as a whole. Christine's actions increased the value of the estate and, as such, markedly increased the shares of the estate owed to herself, to Matthew, and even to Richard. We affirm the county court's decision to award Christine $42,888 in attorney fees, which accounts for a large portion of the $47,924.48 in attorney fees she incurred in bringing her petition before the county court and in acting as successor personal representative.

### (b) Denial of Richard's Request for Fees

Finally, Richard challenges the county court's failure to award him any attorney fees that were incurred in his defense of Christine's petition. He alleges that such fees are warranted even though he was not successful in his defense, as he and his counsel acted in good faith in defending his administration of the estate. Upon our review, we affirm the decision of the county court denying Richard any attorney fees.

Richard asked that he be awarded attorney fees in the amount of $14,527.50, which were "incurred in providing legal representation [to him] during the course of the [county court] proceeding[s]." The county court denied Richard's request, finding:

> Richard breached his fiduciary duties and mismanaged the Estate in several ways. This Estate does not appear to be complex and does not involve difficult questions of law. Richard's service as Personal Representative was negligible and caused the Estate to lose value. Richard failed to close the Estate in a reasonable time and caused Christine to pursue litigation to protect the best interests of the Estate. Richard had ample time to administer the Estate properly and efficiently and had several

opportunities to course-correct, but he failed to do so. Richard was removed as Personal Representative of the Estate.

In this opinion, we have affirmed the majority of the county court's findings regarding Richard's mismanagement of the estate. We have also affirmed in part the county court's decision to surcharge Richard as a result of the dissipation of the estate's assets during his tenure as personal representative. Given our affirmance of these findings, we can find no abuse of discretion in the county court's order to deny Richard's application for attorney fees. Richard simply failed to properly administer the estate, and no fees should be awarded based on his mismanagement.

## VI. CONCLUSION

Because Richard did not timely appeal from the county court's order removing him as personal representative of the estate, this court lacks jurisdiction to consider the merits of Richard's argument as to this issue. We dismiss that portion of the appeal challenging Richard's removal. We affirm in part the county court's order requiring Richard to pay a surcharge and attorney fees to Christine. However, we remand the cause to the county court for an exact calculation of the amount of surcharge Richard is required to pay based on his failure to collect rent and combine that with its prior finding on the amount of surcharge due based on Richard's payment of unjustified expenses with estate funds. We affirm the county court's decision denying Richard's request for any attorney fees.

AFFIRMED IN PART, DISMISSED IN PART,
AND IN PART REMANDED WITH DIRECTIONS.